TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00009-CV






City of Round Rock and Round Rock Fire Chief Larry Hodge, Appellants


v.


Mark Whiteaker, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT

NO. D-1-GN-06-003576, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING





O P I N I O N


 This appeal is the latest in the rapidly-evolving jurisprudence addressing, in light of
City of Houston v. Williams, (1) the extent to which governmental immunity bars suits arising from
alleged violations of local government code chapter 143. Mark Whiteaker, a lieutenant in the Round
Rock Fire Department, sued the City of Round Rock and its fire chief, Larry Hodge (collectively,
the City), claiming that his rights under local government code section 143.036 were violated when
Hodge promoted another fire lieutenant to a captain position that Whiteaker desired. Whiteaker
sought remedies that include retroactive promotion, back pay, and back benefits. The City filed a
plea to the jurisdiction, asserting that Whiteaker lacked standing, that he failed to exhaust
administrative remedies, and that his claims were barred by the City's governmental immunity. The
district court denied the plea, and the City appeals from this order. (2) 

 Williams and other recent Texas Supreme Court decisions regarding sovereign or
governmental immunity require us to conclude that Whiteaker's claims are barred by governmental
immunity to the extent they seek back pay or other retrospective monetary relief, but not to the extent
they seek to compel the City to comply with chapter 143 prospectively. The record before us
indicates that Whiteaker may be able to cure this partial jurisdictional defect by amending his
pleadings. For these reasons, and because we overrule the City's other issues, we affirm the order
of the district court in its entirety.

 

STANDARD AND SCOPE OF REVIEW

 The subject-matter jurisdiction of a trial court may be challenged through a plea to
the jurisdiction. See Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 225-26
(Tex. 2004); Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000); Hendee v. Dewhurst,
228 S.W.3d 354, 366 (Tex. App.--Austin 2007, pet. denied). The determination of whether a trial
court has subject-matter jurisdiction begins with the pleadings. See Miranda, 133 S.W.3d at 226. 
The pleader has the initial burden of alleging facts that affirmatively demonstrate the trial court's
jurisdiction to hear the cause. Id. (citing Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d
440, 446 (Tex. 1993)). Whether the pleader has met this burden is a question of law that we review
de novo. Id. We construe the pleadings liberally and look to the pleader's intent. Id. 

 If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial
court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue
is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. Id. at
226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the
jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. Miranda,
133 S.W.3d at 227.

 However, "a court deciding a plea to the jurisdiction is not required to look solely
to the pleadings but may consider evidence and must do so when necessary to resolve the
jurisdictional issues raised." Bland, 34 S.W.3d at 555. When a plea to the jurisdiction challenges
the existence of facts alleged by the pleader to establish the trial court's subject-matter jurisdiction,
the trial court must consider relevant evidence submitted by the parties. Miranda, 133 S.W.3d at 227
(citing Bland, 34 S.W.3d at 555); Hendee, 228 S.W.3d at 366. To varying degrees, this jurisdictional
inquiry may also implicate the merits of the pleader's cause of action. Compare Bland, 34 S.W.3d
at 554-55 (citing challenges to associational standing and personal jurisdiction as entailing "an
evidentiary inquiry [that] . . . does not involve a significant inquiry into the substance of the claims"
and holding that challenge to taxpayer standing did not implicate merits), with Miranda, 133 S.W.3d
at 227-28 (describing overlapping jurisdictional and merits inquiry regarding challenge to whether
parks and wildlife department acted with gross negligence so as to waive sovereign immunity under
the recreational use statute). When the consideration of a trial court's subject-matter jurisdiction
requires the examination of evidence, the trial court exercises its discretion in determining whether
the jurisdictional determination should be made at a preliminary hearing or await fuller development
of the case, mindful that the jurisdictional determination must be made as soon as practicable. 
Miranda, 133 S.W.3d at 227-28.

 "[I]n a case in which the jurisdictional challenge implicates the merits of the
plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews
the relevant evidence to determine if a fact issue exists." Id. at 227. This standard, which "generally
mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)," seeks to
reconcile "the fundamental precept that a court must not proceed on the merits of a case until
legitimate challenges to its jurisdiction have been decided" while "protect[ing] the interests of the
state and the . . . claimants in cases . . . in which the determination of the subject matter jurisdiction
of the court implicates the merits of the parties' cause of action." Id. at 228. Accordingly, when
reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence
has been submitted to support the plea that implicates the merits of the case, we take as true all
evidence favorable to the nonmovant and indulge every inference and resolve any doubt in the
nonmovant's favor. Id. Whether the evidence presents a fact question regarding a jurisdictional fact
is a question of law that we review de novo. Id.

 

CHAPTER 143 Before turning to the parties' pleadings and jurisdictional evidence, it is helpful to
first survey the statutory context in which this proceeding arises--chapter 143 of the local
government code. (3)

 Chapter 143 of the local government code is the current incarnation of the Firefighter
and Police Civil Service Act. Chapter 143 is intended "to secure efficient fire and police
departments composed of capable personnel who are free from political influence and who have
permanent employment tenure as public servants." Tex. Loc. Gov't Code Ann. § 143.001(a)
(West 1999). To that end, positions in the fire and police departments of municipalities governed
by chapter 143 are classified, receive civil service protection, and are filled from promotion
eligibility lists based on objective, merit-based qualifications and competitive testing. Id.
§ 143.021 (West 1999). 

 Municipalities are not automatically governed by chapter 143. Instead, the legislature
has permitted municipalities with a population of 10,000 or more that have a paid fire department
and police department to opt-into the chapter 143 regime through a local election. Id. § 143.002
(West Supp. 2006), § 143.004 (West 1999). The voters of Round Rock have approved the adoption
of chapter 143 and, at all times relevant to this case, it has governed the City's fire and police
departments. The City has established a Firefighters' and Police Officers' Civil Service Commission
(the Commission) to administer and implement chapter 143 in accordance with its purposes. See
id. § 143.001, § 143.006 (West Supp. 2006). 

 In a municipality like the City that is governed by chapter 143, the municipal
governing body establishes by ordinance the classifications and number of positions in each
classification. Id. § 143.021(a). In this manner, the governing body can create new positions or,
within certain limitations, abolish them. See City of San Antonio v. Wallace, 338 S.W.2d 153, 155-59 (Tex. 1960); Michna v. City of Houston, 521 S.W.2d 331, 334-35 (Tex. Civ. App.--Houston
[1st Dist.] 1975, no writ). 

 Promotion eligibility lists for vacancies in each non-entry level classification are
created by administering a competitive written exam open to promotion-eligible candidates. See
Tex. Loc. Gov't Code Ann. §§ 143.028, .032 (West Supp. 2006), § 143.030 (West 1999). 
Candidates who score 70 points or above (the maximum being 100 points) pass the exam. See id.
§ 143.033(c) (West Supp. 2006). Based on the candidates' exam scores and additional points
awarded based on seniority, passing candidates are ranked on a promotion eligibility list. Id.
§ 143.033(b)-(c). Each promotion eligibility list remains in effect for one year after the date on
which the exam was given, "unless exhausted" earlier. Id. § 143.036(h) (West Supp. 2006). As
vacancies arise, the commission shall submit names from the list to the department head until each
vacancy is filled or the list is exhausted. Id. § 143.036(c).

 If a vacancy arises before a promotion eligibility list expires or is exhausted, the
department head is required to fill the vacancy by permanent appointment from the list within sixty
days after the date the vacancy occurs. Id. § 143.036(e). Texas courts have repeatedly held that a
department head's duty to fill a vacancy from a promotion eligibility list is mandatory--he or she
has no discretion not to fill the vacancy. See International Ass'n of Firefighters v. Townsend,
622 S.W.2d 562, 563 (Tex. 1981) (per curiam); Duckett v. City of Houston, 495 S.W.2d 883, 886-87
(Tex. 1973); see Klinger v. City of San Angelo, 902 S.W.2d 669, 673-74 (Tex. App.--Austin 1995,
writ denied). If no promotion eligibility list exists at the time the vacancy arises, the department
head must fill the vacancy by permanent appointment from a promotion eligibility list that the
commission shall create by conducting a new promotional exam. Id. 

 The top-ranked candidate on a promotion eligibility list at the time a vacancy occurs
has the "primary right" to be appointed to fill the vacancy not later than the last day of the sixty-day
statutory period in which the department head is required to fill the vacancy, and failure to timely
fill the vacancy results in the top-ranked candidate's entitlement to the appointment, as a matter of
law, effective on the sixtieth day. Lee v. Downey, 842 S.W.2d 646, 649 (Tex. 1992) ("A promotion
is considered effective as of the last day that the city could lawfully have filled the vacancy; that is,
sixty days from the date the vacancy was created."); Duckett, 495 S.W.2d at 887; Klinger,
902 S.W.2d at 673-74; see also Michna, 521 S.W.2d at 334-35 (holding that top candidates on
promotion list existing when vacancies arose were entitled to promotions and pay beginning 90 days
after the vacancies arose until the positions were validly abolished by ordinance). (4) 

 Assuming the department head acts timely, however, he or she possesses some
discretion to appoint a candidate from the promotion eligibility list other than the top-ranked
candidate. When a vacancy arises, the top three ranking candidates on the promotion eligibility list
(or, if there are less than three candidates on the list, those candidates) are submitted to the
department head, who is required to appoint the highest-ranking candidate unless he or she "has a
valid reason for not appointing the person." Tex. Loc. Gov't Code Ann. § 143.036(f). If the
department head elects not to appoint ("bypass") a top-ranked candidate, the department head is
required to "personally discuss the reason with the person being bypassed before appointing another
person" and file the reason in writing with the commission. Id. The bypassed candidate has the right
to seek review with the commission regarding the reason for the bypass. Id. If the candidate does
not apply for review or the commission does not set aside the bypass, the candidate's name is
returned to its place on the eligibility list and shall be resubmitted to the department head if a
vacancy occurs. Id. § 143.036(g). However, if a department head bypasses a candidate three times,
files the reason for each bypass in writing, and the commission does not set aside any bypass, the
person's name shall be removed from the promotion eligibility list. Id. 


PLEADINGS AND JURISDICTIONAL EVIDENCE

 The City challenged the sufficiency of Whiteaker's pleadings and submitted
evidence in an attempt to controvert some of Whiteaker's pled jurisdictional facts. Some of these
challenges, as explained below, implicate the merits of Whiteaker's claims. Whiteaker responded
with his own jurisdictional evidence. Accordingly, we begin our jurisdictional analysis by reviewing
both Whiteaker's pleadings and the parties' jurisdictional evidence to identify (1) facts alleged in
Whiteaker's pleadings that are unchallenged; (2) any jurisdictional facts that the City has challenged
and conclusively negated; and (3) any jurisdictional facts that the City has challenged but about
which a fact issue remains. See Miranda, 133 S.W.3d at 226. Unless the City has challenged and
conclusively negated a jurisdictional fact pled by Whiteaker, we must assume the fact to be true for
purposes of our jurisdictional analysis. Id. The following summary reflects this analytical
framework, and we emphasize that we are expressing no opinion regarding the ultimate merits of
any of the parties' factual contentions. 

 In July 2005, the Round Rock City Council enacted an ordinance creating new
positions in several fire department classifications, including a total of eleven new captain positions. 
See Tex. Loc. Gov't Code Ann. § 143.021. (5) The ordinance also prescribed the division to which
each captain position would be assigned: eight of the new captain positions were to be in
suppression, one in fire prevention, and two in training. 

 Because no promotion eligibility list for captain positions existed at the time the new
captain vacancies arose, the Commission was required to administer a promotional exam for eligible
fire lieutenants and create a new list. See id. §§ 143.028, .030, .032, .033. On October 5 or 6, 2005,
the Commission administered the required exam and created a promotion eligibility list of twelve
candidates. Lieutenant Whiteaker ranked eleventh on the list. 

 Chief Hodge initially extended written offers of captain promotions, effective
October 22, to each of the top eleven candidates on the promotion eligibility list. (6) Whiteaker signed
the document, verifying that "I accept the promotion to the rank of fire Captain pursuant to the
conditions described herein,"and returned it. On October 27, however, Hodge emailed the top eleven
captain candidates "to notify you that the letters you signed accepting a promotion to the rank of
captain effective [October] 22, 2005, are null and void since no promotions were made . . . due to
concerns for assignment to a 40 hour work week." While some fire department assignments had a
shift-based schedule (e.g., 24 hours on, 48 hours off), other assignments--including the two captain
positions assigned to the training division--required a Monday-through-Friday, 40-hour work week. 
This and other portions of the record indicate that many firefighters prefer a shift-based schedule for
various reasons. In his email, Hodge stated that he would contact each candidate in rank order of
eligibility over the following week "to explain what positions are open and your options regarding
the positions to be filled so this process can be completed." 

 After contacting the ten higher-ranking candidates in rank order and offering them
their choice from among the captain positions remaining available, Hodge had remaining to offer
Whiteaker only one of the two captain positions assigned to training (which, again, required a 40-hour work week). According to Whiteaker, who testified by affidavit, he explained to Hodge that
he could not accept this particular captain promotion for "personal reasons" related to its work
schedule--"I lived in Temple, and because of my wife's work schedule, had certain childcare
obligations that could not be accommodated by a Monday through Friday, 40-hour work schedule." 
At the time, Whiteaker had been working a 24-hours on, 48-hours off shift schedule in suppression. 
Hodge, Whiteaker testified, responded "that if I declined the promotion I would be removed from
the promotion eligibility list and would not have the opportunity to promote to Captain unless I took
another promotional examination and was placed on a future promotional eligibility list." "When
I protested," Whiteaker added, Hodge "explained that he felt the Civil Service Act required my
removal from the list if I voluntarily declined an offer of promotion." "After consulting with [his]
representatives in the Round Rock Firefighter's Association," Whiteaker "told Chief Hodge that [he]
did not agree that [Hodge's] was a correct interpretation of the Civil Service Act." 

 On November 15, Whiteaker--who states that he was "directed" to do so by Chief
Hodge--countersigned a memorandum from Hodge acknowledging that Hodge had offered him a
promotion to Captain, that he had "declined the offer . . . and requested to remain on the eligibility
list," but that Hodge was instead required to remove him from the list. The document concluded
with, "My signature is verification that I have received and understand the information contained
within this document, although I may not agree with it[s] actions pursuant to the conditions
described herein." Hodge then filled the eleventh new captain position by promoting the twelfth-ranking candidate on the promotion eligibility list. After some negotiations involving Hodge, other
City officials, Whiteaker, and representatives of the Round Rock Firefighters Association, (7) Hodge,
as the City acknowledged in its plea to the jurisdiction, "did not remove [Whiteaker's] name from
the list at that time." 

 On January 14, 2006, one of the captains assigned to the training division, Billy
Wusterhausen, was promoted to battalion chief, thus creating another captain vacancy in that
division. Whiteaker pled and also testified that, beginning at some unspecified time, this vacancy
was filled by a captain previously assigned to suppression, Johnnie Bohac, creating a captain vacancy
in suppression. According to Whiteaker, "Mr. Bohac continues to work in that position, and is listed
in the RRFD website as a Captain in the Training Division." Whiteaker's pleading and evidence
concerning this possible captain vacancy in suppression proves to be significant to our ultimate
disposition of this appeal.

 Whiteaker testified that, on January 25, while he was on duty, Deputy Fire Chief
David Smith presented him with a memorandum from Chief Hodge, dated the same day. The
memorandum stated that "you are promoted to captain effective 8:00 a.m. Saturday,
January 28, 2006, to fill the captain's vacancy in Training created by [the] promotion to battalion
chief. Your first day in Training will be Monday, January 30, 2006." The memorandum further
ordered Whiteaker to report to the captain in the training division for further instruction not later than
8:00 a.m., Monday, January 30, 2006. Whiteaker testified that "I explained to Chief Smith that I was
unable to accept this promotion for the same reason that I had explained to Chief Hodge back in
November." Smith departed and relayed Whiteaker's response to Chief Hodge. Later that day,
Smith telephoned Whiteaker and "told me that Chief Hodge had instructed him to say that I had been
promoted, and if I wanted to avoid being promoted, I had to write a letter according to Civil Service.
[Smith] said he would email me the language that needed to be included." Smith subsequently sent
an email to Whiteaker stating that "I talked to Chief and the following must be included for civil
service: I request a voluntary demotion from the rank of Fire Captain to the rank of Fire Lieutenant
within the Round Rock Fire Department." Whiteaker "called Deputy Chief Smith back to protest
having to write such a letter," to which Smith responded that Hodge "had said that if I didn't write
a letter, I had to show up at Training Monday morning at 8:00 a.m., and that if I didn't, I would be
considered absent without leave and disciplinary action would be taken." 

 Whiteaker consulted with Firefighters Association leadership and counsel. Counsel
drafted an email to the city attorney protesting Chief Hodge's actions and emphasizing that "any
letter written as required by the Chief will not be understood by us to preclude Whitaker's right to
pursue this matter further through appropriate legal action." Whiteaker testified that he drafted two
letters, one requesting a voluntary demotion and the second advising of his view that it was illegal
to remove him from the promotional eligibility list because he had declined promotion to the training
captain position. However, the record does not contain these letters, nor indicate what happened to
them. Whiteaker subsequently met with Chief Hodge and Deputy Chief Smith. According to
Whiteaker, Hodge:



 explained that he was requiring me to write the letter requesting a voluntary demotion
because the City Attorney had advised him that the Civil Service Act would not
allow the City to create another promotional eligibility list to fill the position in
Training until this list was exhausted. He therefore instructed me to write a letter
requesting demotion and advised me of what the letter should say. 



Whiteaker "then went to another room and drafted the letter as instructed," showed his draft to Chief
Hodge, "who reviewed it, and then directed that I make further changes before he would accept it."
Once Hodge approved the letter, Whiteaker signed it. A copy is included in the City's
jurisdictional evidence:



 Chief Hodge I would like to thank you for the opportunity you have offered me to
promote to the rank of Captain in training. At this time I regret I will have to ask to
be demoted from the rank of Captain back to the rank of Lieutenant and to be able
to remain at my current location at station # 2 on "C" shift. I have a four year old
daughter that is going to a private school and my wife is a school teacher and their
schedules conflict regularly. This means I have the duty of taking my daughter to
school and picking her up. . . . At this time in my life working shift work benefits my
family life the most. I have met with you and I understand that in no way will this
be held against me on the next Captains promotions and I appreciate your
understanding. I plan on immediately starting back into my studying for the next
promotional exam and plan on improving on my next score and hopefully things will
work out [] and [I] can be able to promote to the rank of Captain in the near future. 



Whiteaker testified that "I did as instructed. . . . The letter does not truly represent my position, and
I told Chief Hodge as much. I signed the letter to avoid threatened discipline."

 In a memorandum dated the following day, Chief Hodge formally accepted
Whiteaker's letter, purported to demote him from Captain to Lieutenant, "effective at 0701 hours
January 28, 2006," and assigned him to the same shift and station he had previously been working.
As noted above, Hodge's January 25 memorandum had stated that Whiteaker's promotion to captain
was "effective 8:00 am Saturday, January 28, 2006." Read literally, Hodge's acceptance would have
made Whiteaker's demotion from Captain effective before his promotion to Captain took effect. The
parties have not addressed the significance, if any, of this discrepancy. 

 Hodge testified that, in early February, "I declared the October 6 eligibility list
exhausted because there were no other Lieutenant candidates on the eligibility list who I could
promote to the Captain in Training vacancy." The Commission thereafter posted notice of a
promotional examination for Captain for April 4, 2006. See Tex. Loc. Gov't Code Ann.
§ 143.036(a), (d). Whiteaker's counsel, on behalf of Whiteaker and the Association, wrote the city
attorney on February 6 disputing the Fire Department's position that the October 2005 eligibility list
had been exhausted and that Whiteaker, formerly the top (sole) candidate on that list, no longer had
a right of promotion to the next captain slot. He maintained that "having declined to accept the
position in Training does not deprive Lt. Whiteaker of his place on the promotional eligibility list. 
The Fire Chief simply has bypassed Lt. Whiteaker for a position he cannot, for personal reasons,
accept." For these reasons, Whiteaker's name should "be the first provided by the Commission for
the next Captain vacancy." The letter concluded with the warning that Whiteaker and the
Association reserved all options, including legal action. 

 The Commission proceeded to conduct a captain promotional exam on April 4 and
generated a new promotion eligibility list of five candidates. Whiteaker did not take this exam and
he was not included on the new eligibility list. The new list was used to fill a new captain vacancy
in suppression that had arisen on February 28, another one arising in mid-April, and two new captain
positions that were created by the City Council in May. None of these positions were offered to
Whiteaker, consistent with the City's position that he had not qualified as a candidate on the new,
applicable promotion eligibility list. 

 It is undisputed that Whiteaker did not file any formal proceeding or appeal with the
Commission. Instead, he filed suit in district court in September 2006. Whiteaker's central theory
is that none of his actions, nor those of Chief Hodge or other City personnel, removed him from the
October 2005 promotion eligibility list or exhausted the list; that he remained as the sole candidate
when the February 28 captain vacancy in suppression arose; and that he accordingly had a primary
right to be appointed to the vacancy within sixty days after it arose. See Tex. Loc. Gov't Code Ann.
§ 143.036(e); Lee, 842 S.W.2d at 649; Duckett, 495 S.W.2d at 887; Klinger, 902 S.W.2d at 674. 
Because Hodge failed to so appoint him, Whiteaker contends, he was entitled to the promotion, as
a matter of law, on the last day of the sixty-day period, April 29, 2006. See Lee, 842 S.W.2d at 649;
Duckett, 495 S.W.2d at 887; Klinger, 902 S.W.2d at 674. 

 Based on this theory, Whiteaker asserts three causes of action: 



 a declaration under the Uniform Declaratory Judgments Act "of his right to promotion under
§ 143.036 retroactive to April 29, 2006 . . . and to pay for that position at all times
thereafter."
 injunctive relief "enjoining Defendants from violating Plaintiff's rights under § 143.036 by
unlawfully removing him from the October 6, 2005 Captain's promotional eligibility list,
failing to promote him from that list to Captain on April 29, 2006, and from failing to
provide him with the pay and benefits of the Captain rank after April 29, 2006."
 mandamus to compel Hodge to perform his "non-discretionary duty" to promote Whiteaker
to captain retroactive to April 29, 2006. 




Whiteaker prayed for the following relief:




 A declaration that "Defendants' failure to promote Plaintiff to the position of Fire Captain
on or about April 29, 2006 violated Defendants' obligations and Plaintiff's rights under
Texas Local Government Code § 143.036."
 A permanent injunction against the Defendants enjoining them "from violating § 143.036
by failing and refusing to promote plaintiff to the rank of Captain on April 29, 2006."
 "Order the Defendants to promote Plaintiff to Captain . . . retroactive to April 29, 2006 and
to make Plaintiff whole for all pay and benefits lost as a result of Defendants' unlawful
failure to promote Plaintiff on April 29, 2006."
 A writ of mandamus "directing Defendants to comply immediately with . . . § 143.036 by
promoting Plaintiff to the rank of Captain effective April 29, 2006, and to pay him the salary
prescribed for that position at all times thereafter."
 Prejudgment interest "on all backpay owed to Plaintiff."
 Attorney's fees and costs under the UDJA.
 Post-judgment interest. 
 Such further relief, legal or equitable, as the court deems necessary and just. 




ANALYSIS

 In four issues, the City asserts that the district court erred in denying its plea to the
jurisdiction because (1) Whiteaker lacks standing; (2) Whiteaker's claims are barred by
governmental immunity; (3) chapter 143 does not waive such immunity; and, alternatively,
(4) Whiteaker failed to exhaust administrative remedies. 


Standing

 The City asserts that Whiteaker has no justiciable interest in his suit--and, therefore,
lacks standing--because he had no right or interest in promotion to the February 2006 captain
vacancy in suppression. Standing is a doctrine of justiciability, a threshold question that implicates
subject-matter jurisdiction and emphasizes the necessity of a concrete injury for a justiciable claim
to be presented. Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 851 (Tex. 2000) (citing Patterson
v. Planned Parenthood, 971 S.W.2d 439, 442 (Tex. 1998)). The standing requirement stems from
two limitations on subject-matter jurisdiction: the separation of powers doctrine and, in Texas, the
open courts provision. Id. The general test for standing in Texas requires that there "(a) shall be a
real controversy between the parties, which (b) will be actually determined by the judicial declaration
sought." Texas Ass'n of Bus., 852 S.W.2d at 446 (citing Board of Water Eng'rs v. City of San
Antonio, 283 S.W.2d 722, 724 (Tex. 1955)). 

 If, as Whiteaker asserts, he was the sole remaining candidate on the October 2005
promotion eligibility list and that list remained in effect when the February 2006 captain vacancy
arose, he had a "primary right" under local government code section 143.036 to be promoted to the
vacancy. Lee, 842 S.W.2d at 649; Duckett, 495 S.W.2d at 887; Klinger, 902 S.W.2d at 674. 
Whiteaker has alleged facts demonstrating a real controversy regarding the existence of such a right
and concrete injury from its deprivation, and he seeks a declaration of this right and remedy for its
deprivation. Whiteaker clearly has standing to assert his claims. 

 The crux of the City's standing challenge is that Whiteaker had not, in fact, remained
as the top candidate on the October 2005 promotion eligibility list at the time of the February 2006
captain vacancy because that list had been exhausted by Whiteaker's promotion in January and was
not continued or revived after Whiteaker's voluntary demotion. The City adds that Whiteaker did
not take the exam to qualify for the April 2006 promotional eligibility list and can claim no interest
in being promoted from the list. Similarly, the City argues that Whiteaker waived any interest he
possessed in a promotion while on the October 2005 list, emphasizing his January 26 memorandum
acknowledging exhaustion of the list and advising Chief Hodge that he would "immediately start
back into studying for [his] next promotional exam and plan on improving [his] next score." 

 The City's standing challenge turns on disputed fact issues that overlap with the
merits of Whiteaker's claims. These fact issues include the voluntariness of Whiteaker's
"promotion" and "demotion" and related correspondence. As noted above, Whiteaker produced
jurisdictional evidence that Chief Hodge threatened disciplinary action if he did not either report for
duty as a captain in training or request a demotion and that Hodge dictated the content of the January
26 memorandum. We also observe that the record is unclear whether Whiteaker's January 26
promotion took effect before he was demoted. (8) The presence of fact issues forecloses dismissal
under Miranda. Miranda, 133 S.W.3d at 227-28. Further, these fact issues are intertwined with
several potentially controlling legal issues, including (1) whether Hodge and the City had the right
to unilaterally promote Whiteaker to a captain position against his wishes; (2) conversely, whether
Whiteaker had a right under chapter 143 to continue to decline promotions until a captain position
with a desirable scheduling assignment became vacant; (3) whether the disposition of these legal
issues is affected by the fact that no other candidates besides Whiteaker remained on the
October 2005 promotional eligibility list; and (4) whether Hodge's actions in purporting to promote
Whiteaker had the effect of removing him from the October 2005 list, divesting him of his rights as
the top candidate on the list, and/or exhausting the list. The parties have not yet joined issue on or
developed these legal issues. Where the parties have not yet joined issue or developed the legal
issues that potentially control Whiteaker's standing, the district court did not err or abuse its
discretion in denying the City's plea to the jurisdiction as to that ground. See Hendee, 228 S.W.3d
at 382; Davis v. Burnam, 137 S.W.3d 325, 335 & n.16 (Tex. App.--Austin 2004, no pet.). 

 The City also suggests that Whiteaker's standing turns on whether he possessed a
"vested property interest" in promotion to the February 2006 captain vacancy. The City's attempt
to link standing to the existence of a vested property interest in promotion appears to be derived from
a misreading of City of Amarillo v. Hancock, 239 S.W.2d 788, 790 (Tex. 1951), to the effect that
"absent a property interest in a civil service position, the courts have no jurisdiction to hear the
claim." Hancock instead stands for the principle that there is no inherent judicial jurisdiction to
entertain an appeal from a civil service commission except where the agency action violates a
constitutional provision (such as due process, which presupposes the existence of a property
interest). Hancock does not mean that a person whose statutory rights are being violated could have
no judicial recourse of any kind, or standing to seek it, unless the statutory right implicates
vested property rights. 

 In any event, even under the City's view of standing, the controlling question would
still be whether Whiteaker had remained on the October 2005 promotion eligibility list at the time
the February 2006 captain vacancy arose. The City states that, "[i]t has been long established that
an individual on a promotional eligibility list has a vested interest in a promotion once a vacancy
occurs," and it characterizes the primary statutory right of the top candidate on a promotion
eligibility list as a vested property right or interest in promotion. But the City's contention that
Whiteaker had been promoted and no longer remained on the October 2005 promotion eligibility list,
as previously explained, is not a proper ground for dismissal at this juncture.

 The City's suggestion that one's placement on a promotion eligibility list confers a 
vested property right in a promotion is potentially more significant in its implications for
governmental immunity. The City states that "a limited waiver of immunity is allowed under
[chapter 143] for claims involving vested rights" and Hancock would indeed suggest that the district
court would have inherent jurisdiction to entertain a challenge to City actions alleged to violate such
rights. But as Whiteaker observes, a person's position as the top candidate on a promotional
eligibility list, while conferring a statutory primary right to promotion, does not create an equitable
property interest in promotion. See Firemen's & Policemen's Civil Service Comm'n of City of Fort
Worth v. Williams, 531 S.W.2d 327, 330 (Tex. 1975); Firemen's & Policemen's Civil Serv. Comm'n
of City of Fort Worth v. Kennedy, 514 S.W.2d 237, 239-40 (Tex. 1974); see also Hancock,
239 S.W.2d at 791-92 (fire captain had no vested property interest in position under civil service act
that could give rise to inherent right to appeal from demotion); but see City of Fort Worth v. Nyborg,
999 S.W.2d 451, 457 (Tex. App.--Fort Worth 1999, pet. denied) (describing interest of top
candidate as "an equitable property right in th[e] vacated position and a primary right to promotion"). 
 In sum, we reject both the City's argument that Whiteaker lacks standing to pursue
his claims and its premises that Whiteaker's standing depends upon the existence of a vested
property interest in a promotion and that a person's position as the top candidate on a promotion
eligibility list confers such an interest. We overrule the City's standing issue. 


Governmental immunity

 The City asserts that Whiteaker's claims implicate its governmental immunity, that
chapter 143 does not waive such immunity, and that the district court accordingly lacks subject-matter jurisdiction over Whiteaker's suit. Specifically, it contends that Whiteaker's claims for an
order "mak[ing] Plaintiff whole for all pay and benefits lost as a result of Defendants' unlawful
failure to promote Plaintiff on April 29, 2006" and a writ of mandamus compelling the City to pay
back salary from that date seek "money damages" and, therefore, implicate its governmental
immunity. (9) Whiteaker responds that his claims seek declaratory, injunctive, and mandamus relief
to compel the City to comply with chapter 143 and do not implicate the City's governmental
immunity. Alternatively, Whiteaker contends that chapter 143 waives the City's governmental
immunity from his claims. 


 General principles

 When performing governmental functions, political subdivisions of the state,
including municipalities like the City, enjoy governmental immunity. See City of Galveston v. State,
217 S.W.3d 466, 467-68 (Tex. 2007). Governmental immunity derives from, or is an aspect of, the
state's sovereign immunity. See Reata Constr. Corp. v. City of Dallas, 197 S.W.3d 371, 374
(Tex. 2006); Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3 (Tex. 2003). 
Governmental immunity protects municipalities against lawsuits for "money damages." See City
of Galveston, 217 S.W.3d at 468 ("We take as our starting point the premise that in Texas a
governmental unit is immune from tort liability unless the Legislature has waived
immunity."); Reata Constr. Corp., 197 S.W.3d at 374 (quoting Texas Natural Res.
Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 853 (Tex. 2002) ("Sovereign immunity protects
the State from lawsuits for money damages.")). Sovereign or governmental immunity encompasses
two principles: immunity from being sued and immunity from liability. IT-Davy, 74 S.W.3d at 853. 
When clothed with governmental immunity, municipalities enjoy immunity from suit unless
expressly waived by the legislature. City of Galveston, 217 S.W.3d at 469; Reata Constr. Corp.,197
S.W.3d at 374. Immunity from suit deprives a trial court of subject-matter jurisdiction. Reata
Constr. Corp.,197 S.W.3d at 374 (citing Miranda, 133 S.W.3d at 224).

 Sovereign and governmental immunity are judge-made, common-law doctrines that
are deeply rooted in Texas jurisprudence and its antecedents. Reata Constr. Corp.,197 S.W.3d at
374-75; Tooke v. City of Mexia, 197 S.W.3d 325, 331-32 (Tex. 2006); Hosner v. De Young,
1 Tex. 764, 769 (1846). The contemporary rationale or justification for these doctrines is to protect
state or local government resources from the costs of paying judgments and defending against them. 
Reata Constr. Corp., 197 S.W.3d at 375 ("A lack of immunity may hamper governmental functions
by requiring tax resources to be used for defending lawsuits and paying judgments rather than using
those resources for their intended purposes."); Tooke, 197 S.W.3d at 331-32 (sovereign immunity
"remains firmly established, and as it has come to be applied to the various governmental entities
in this State, an important purpose is pragmatic: to shield the public from the costs and consequences
of improvident actions of their governments"). Relatedly, the judiciary has deferred to the legislature
to decide when, if, or to what extent to waive immunity, as these decisions entail sensitive policy
judgments concerning the use of public resources and governmental functions that are the proper
domain of the legislative rather than judicial branch. City of Galveston, 217 S.W.3d at 469 ("This
heavy presumption in favor of immunity arises not just from separation-of-powers principles but
from practical concerns. In a world with increasingly complex webs of government units, the
Legislature is better suited to make the distinctions, exceptions, and limitations that different
situations require. The extent to which any particular city, county, port, municipal utility district,
school district, or university should pay damages involves policy issues the Legislature is better able
to balance."); Reata Constr. Corp., 197 S.W.3d at 375 ("We have generally deferred to the
Legislature to waive immunity because the Legislature is better suited to address the conflicting
policy issues involved.") (citing IT-Davy, 74 S.W.3d at 854 ("We have consistently deferred to the
Legislature to waive sovereign immunity from suit, because this allows the Legislature to protect its
policymaking function.")). In fact, in recent years, the legislature has expressed its intent that "[i]n
order to preserve [its] interest in managing state fiscal matters through the appropriations process,
a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by
clear and unambiguous language." Act of May 26, 2001, 77th Leg., R.S., ch.1158, § 8, sec. 311.034,
2001 Tex. Gen. Laws 2570, 2572 (current version at Tex. Gov't Code Ann. § 311.034); see Reata
Constr. Corp., 197 S.W.3d at 375 (in section 311.034, "[t]he Legislature has expressed its desire to
preserve its interest in managing fiscal matters through the appropriations process by maintaining
sovereign immunity unless it has clearly and unambiguously stated otherwise"). (10) 

 The supreme court has also stated that sovereign immunity protects the state and its
subdivisions against suits seeking to "control state action." IT-Davy, 74 S.W.3d at 855-56; Director
of Dep't of Agric. & Env't v. Printing Indus. Ass'n, 600 S.W.2d 264, 265 (Tex. 1980);
Griffin v. Hawn, 341 S.W.2d 151, 152 (Tex. 1960). In IT-Davy, the court suggested that the
imposition of contract liability against the state is a form of "controlling state action," IT-Davy,
74 S.W.3d at 855-56 (suit "attempt[s] to control state action by imposing liability on the State"), and
it has used the phrase to refer to judgments that would effectively direct or control a government
official in the exercise of his or her discretionary statutory authority. See Printing Indus. Ass'n,
600 S.W.2d at 265-66; Griffin, 341 S.W.2d at 152-53; Short v. W.T. Carter & Bro., 126 S.W.2d 953,
962 (Tex. 1939) ("A suit . . . to enjoin the Land Commissioner, when acting within the scope of his
authority, from making an award or executing a lease, is a suit to control the action of the State in
selling its public lands and is therefore in effect a suit against the State, which cannot be maintained,
the State, not having consented to be sued."). (11) 

 The converse is also well-established: if the complained-of acts of a state official are
illegal or outside his statutory authority, "an entity or person whose rights have been violated . . .
may bring suit to remedy the violation or prevent its occurrence, and such suit is not a suit against
the State requiring legislative or statutory authorization." Printing Indus. Ass'n, 600 S.W.2d at 265-66; see Texas Highway Comm'n v. Texas Ass'n of Steel Imps., Inc., 372 S.W.2d 525, 530-31
(Tex. 1963); Cobb v. Harrington, 190 S.W.2d 709, 712 (Tex. 1945); State v. Epperson, 42 S.W.2d
228, 231 (Tex. 1931). Thus, sovereign immunity is not implicated by a suit to enjoin a government
official from acting outside his statutory authority, Printing Indus. Ass'n, 600 S.W.2d at 265-66;
Griffin, 341 S.W.2d at 153-54, nor one alleging a justiciable controversy regarding whether a
government official is acting outside his statutory authority and seeking a declaration construing that
authority. Steel Imps., 372 S.W.2d at 530-31; Cobb, 190 S.W.2d at 712; see also IT-Davy,
74 S.W.3d at 855 ("Private parties may seek declaratory relief against state officials who allegedly
act without legal or statutory authority."). Furthermore, in some circumstances, mandamus may lie
to compel a government official to perform a clear mandatory, ministerial statutory duty without
implicating sovereign immunity. Epperson, 42 S.W.2d at 231. 

 In such cases, Texas courts have labored to draw two distinctions of relevance here
that control whether the claims asserted implicate sovereign or governmental immunity: 
(1) whether the actions alleged as the basis of the claim fall outside the actor's statutory powers or
in fact are within the actor's discretionary statutory powers and thereby seek to "control state action,"
see Printing Indus. Ass'n, 600 S.W.2d at 265-70; Griffin, 341 S.W.2d at 153-54; see also Hendee,
228 S.W.3d at 368; McLane Co., 148 S.W.3d at 649 (12); and (2) whether the remedy actually
establishes a right to money damages. See, e.g., IT-Davy, 74 S.W.3d at 856 ("[P]rivate parties
cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money
damages, such as a contract dispute, as a declaratory-judgment claim."); see also Federal Sign
v. Texas S. Univ., 951 S.W.2d 401, 404 (Tex. 1997) ("A state official's illegal or unauthorized
actions are not acts of the State. Accordingly, an action to determine or protect a private party's
rights against a state official who has acted without legal or statutory authority is not a suit against
the State that sovereign immunity bars. In other words, we distinguish suits to determine a party's
rights against the State from suits seeking damages.") (citations omitted). 


 Governmental immunity and chapter 143 

 Chapter 143 explicitly authorizes retroactive reinstatement or promotion and back pay
awards in certain instances. A firefighter or police officer who receives a disciplinary suspension
has the right to appeal to the civil service commission, which may restore the person to his position
and award "full compensation for the actual time lost as a result of the suspension at a rate of pay
provided for the position or class of service from which the person was suspended." See Tex. Loc.
Gov't Code Ann. § 143.052 (West 1999), § 143.053 (West Supp. 2006); see also id. § 143.010(a)
(West 1999) (procedures for administrative appeals under chapter 143, including requirement that,
"if a fire fighter or police officer wants to appeal to the commission from an action for which an
appeal or review is provided by this chapter, [the person] need only file an appeal with the
commission within 10 days after the date the action occurred"). Chapter 143 also authorizes
administrative appeals to the commission from: (1) the grading of a promotional exam, see id.
§ 143.034(a) (West 1999) (candidate may appeal grade to commission within five business days);
(2) promotional pass-overs, as previously discussed, see id. § 143.036(f) (candidate may "apply"
with commission for review of "valid reasons" for pass-over that department head filed with
commission), (g) (commission may "set aside" bypass); and (3) a department head's request to
involuntarily demote a firefighter or officer. See id. § 143.054 (West 1999); see generally
Stauffer v. City of San Antonio, 344 S.W.2d 158, 160 (Tex. 1961) (describing these delegations of
jurisdiction to civil service commissions); Corbitt v. City of Temple, 941 S.W.2d 354, 355 n.1
(Tex. App.--Austin 1997, writ denied) (same). 

 "If a fire fighter or police officer is dissatisfied with any commission decision," he
may file a de novo appeal in district court within ten days after the decision is either sent to him by
certified mail or personally received by him or his designee. Tex. Loc. Gov't Code Ann.
§ 143.015(a)-(b) (West 1999). In such appeals, "[t]he district court may grant the appropriate legal
or equitable relief necessary to carry out the purposes of this chapter," which "may include
reinstatement or promotion with back pay if an order of suspension, dismissal or demotion is set
aside." Id. § 143.015(b). Further, if "the court finds for the fire fighter or police officer, the court
shall order the municipality to pay lost wages to the fire fighter or police officer." Id. § 143.015(d). 

 The City acknowledges that these statutory administrative and appellate remedies
constitute "limited waivers" of sovereign immunity. See, e.g., Texas Dep't of
Protective & Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d 170, 198 (Tex. 2004) (right
to judicial review in section 2001.171 of the APA "provides a limited waiver of sovereign
immunity" because "the Legislature necessarily understood that state agencies would be sued in court
by persons exercising that right"); Dallas/Fort Worth Int'l Airport Bd. v. Funderburk, 188 S.W.3d
233, 235-36 (Tex. App.--Fort Worth 2006, pet. granted, judgm't vacated w.r.m.) (statutory remedy
provided by Texas Commission on Human Rights Act necessarily provides limited waiver of
sovereign immunity). Whiteaker does not purport to have invoked any of the remedies expressly
provided under chapter 143, however. Cf. Nyborg, 999 S.W.2d at 453-54, 457 (top candidate on
promotion list asserted failure-to-promote claim by filing request with commission for investigation,
hearing, and determination that promotions of higher-ups had created vacancy to which he was
entitled, then appealing adverse commission decision under section 143.015). (13) Instead, he points
to numerous Texas decisions over the years accepting that police officers or firefighters can assert
claims in court for civil service act violations independent of the act's remedies and recover back
pay or other monetary compensation. See Tijerina v. City of Tyler, 846 S.W.2d 825, 829 (Tex. 1992)
(suit to recover overtime pay allegedly withheld in violation of civil service act); Lee, 842 S.W.2d
at 649 (suit for declaratory and injunctive relief and back pay by police officers claiming right to
promotion to jobs filled by civilians; observing that, "It is well settled that when a city fails to fill
a vacant position in accordance with the Civil Service Act, the officers or firefighters who properly
should have obtained such jobs are entitled to retroactive promotion and back pay");
Kierstead v. City of San Antonio, 643 S.W.2d 118, 121-22 (Tex. 1982) (suit for overtime back pay);
Duckett, 495 S.W.2d at 886-87 (mandamus action by top remaining candidate on promotion
eligibility list to compel fire chief to fill unfilled vacancies arising while list was in effect; affirmed
trial court judgment awarding back pay and interest) (14); Stauffer, 344 S.W.2d at 161 (affirming trial
court judgment awarding back salary and reinstatement following military leave of absence); see also
City of San Antonio v. Bullock, 34 S.W.3d 650, 652 (Tex. App.--San Antonio 2000, pet. denied)
(affirming summary judgment that city was required to fill firefighter captain vacancies and award
back pay and benefits to candidates on promotion eligibility list at time vacancy arose);
City of Austin v. Castillo, 25 S.W.3d 309, 314 (Tex. App.--Austin 2000, pet. denied) (suit for back
assignment pay allegedly owed); City of Harlingen v. Avila, 942 S.W.2d 49, 51
(Tex. App.--Corpus Christi 1997, writ denied) (suit for back pay arising from city's implementation
of seniority pay system); City of Austin v. Austin Prof'l Firefighters Ass'n, 935 S.W.2d 179, 183
(Tex. App.--Austin 1996, no writ) (vacated pursuant to settlement) (suit for declaratory and
injunctive relief regarding calculation of longevity pay); City of Lubbock v. Eckles, 888 S.W.2d 621,
623 (Tex. App.--Amarillo 1994, writ denied) (suit regarding alleged underpayment of overtime
pay); International Ass'n of Fire Fighters, Local Union No. 624 v. City of San Antonio, 822 S.W.2d
122, 131-32 (Tex. App.--San Antonio 1991, writ denied) (awarding retroactive promotion and back
pay to firefighters on promotion eligibility list who had primary right to promotions to vacancies
improperly filled by civilians; observing that "[t]he case law is replete with examples where
firefighters have been provided retroactive promotion and back pay where it was found that the City
in question failed to fill a vacant position within the sixty or ninety days as required by the Civil
Service Act"); City of San Antonio v. Kuykendall, 749 S.W.2d 169, 170-71
(Tex. App.--San Antonio 1988, writ denied) (suit regarding amount of injury leave to which
firefighter was entitled); Burkhart v. Moore, 580 S.W.2d 108, 109-11 (Tex. Civ. App.--Eastland,
no writ) (mandamus to compel promotion following invalid abolition of position); Michna,
521 S.W.2d at 332-35 (mandamus action by police lieutenants on promotion eligibility list
challenging city's failure to fill captain vacancies before abolishing positions by ordinance; held that
lieutenants were entitled to retroactive promotion and back pay beginning ninety days after vacancy
until position was abolished); Bostick v. Owens, 423 S.W.2d 471, 471-72
(Tex. Civ. App.--Fort Worth 1968, writ ref'd n.r.e.) (city promoted top candidate on promotion
eligibility list created after vacancy arose; held instead that top candidate on promotion eligibility
list existing at time vacancy arose was entitled to retroactive promotion and back pay effective on
date when promotion was given other candidate); see also Klinger, 902 S.W.2d at 673-74 (stating
rule as "[w]hen a city fails to fill a vacancy in compliance with the [civil service act], the person who
properly should have obtained the promotion is entitled to retroactive promotion and back pay,
effective the last day the city could lawfully have filled the vacancy"). 

 Whiteaker appears to view these decisions as applications of Stauffer v. City of San
Antonio. 344 S.W.2d 158 (Tex. 1961). Stauffer involved a suit by a firefighter to compel
reinstatement after military leave. The civil service act guaranteed a right to reinstatement following
military leave if the firefighter or police officer was physically and mentally fit for duty. The district
court had rendered judgment for the firefighter ordering reinstatement and awarding back pay. The
court of appeals, viewing the suit as an attempt to appeal a civil service commission determination
for which the act (as it then existed) did not provide a right of appeal, held under City of
Amarillo v. Hancock, that the district court lacked subject-matter jurisdiction. See City of
San Antonio v. Stauffer, 331 S.W.2d 443, 446-47 (Tex. Civ. App.--San Antonio 1959, writ granted). 
The supreme court reversed the court of appeals. Although it determined that the act did not provide
an administrative remedy for the firefighter or an appeal from the commission to district court, the
supreme court held that the district court had general subject-matter jurisdiction to determine and
enforce the statutory right because the legislature had not placed that jurisdiction in another tribunal. 
"Since the power to hear and determine that question in a judicial sense is not conferred by law upon
some other tribunal," the court reasoned, "the district court has jurisdiction to decide the same from
a preponderance of the evidence." 344 S.W.2d at 161 (citing Tex. Const. art. V, § 8). The supreme
court affirmed the district court's judgment awarding retroactive reinstatement and back pay. Id.

 Stauffer did not explicitly address the possible implications of governmental
immunity, nor did any of the numerous other cases cited above. Inasmuch as governmental
immunity goes to subject-matter jurisdiction and thus can be raised sua sponte, see Hendee,
228 S.W.3d at 375, the outcomes in these cases arguably imply that immunity does not bar the
claims. See Cassidy v. City of Balch Springs, 223 S.W.3d 612, 615 (Tex. App.--Dallas 2007,
pet. filed) (suggesting as much). Yet these cases are silent regarding the courts' reasoning--whether
the courts believed the claims did not implicate governmental immunity, or that immunity was
implicated but the civil service act waived it, or, as the City suggests, the courts simply never
considered these questions.

 Regardless, any potential governmental-immunity implications from these cases have
been limited by a more recent decision of the Texas Supreme Court. In City of Houston v. Williams,
a group of retired firefighters sought a declaratory judgment that the city had violated chapter 143
in improperly calculating lump-sum payments of accrued vacation and sick leave paid upon
termination and in improperly deducting alleged overpayments of overtime. 216 S.W.3d 827, 828
(Tex. 2007) (per curiam); see Tex. Loc. Gov't Code Ann. §§ 142.0017, 143.115-.116. The city filed
a plea to the jurisdiction asserting governmental immunity, which the district court denied and the
court of appeals affirmed. The court of appeals had reasoned that (1) the general "sue and be sued"
and "plead and be impleaded" language of section 51.075, local government code, waived the city's
governmental immunity and (2) the city had no immunity from the retirees' declaratory judgment
claim because it sought construction of the pertinent statutes and the trial court had purported to
reserve determination of damages for a later date. The supreme court reversed. It relied on Tooke
in regard to the first ground. As for the second ground, the court held that the firefighters'
declaratory judgment claim actually sought money damages and, therefore, implicated the city's
governmental immunity. Williams, 216 S.W.3d at 828-829 (citing IT-Davy, 74 S.W.3d at 856). 

 The supreme court reasoned that "[t]he only injury the retired firefighters allege has
already occurred, leaving them with only one plausible remedy--an award of money damages." Id.
at 829. It further observed that because none of the retired firefighters asserted rights to future
payments, they lacked standing to seek a prospective statutory interpretation on behalf of those
currently employed. Id. The supreme court further explained that whether the plaintiffs sought a
declaration regarding a "legitimate question of statutory interpretation" was irrelevant, because, "[I]n
every suit against a governmental entity for money damages, a court must first determine the parties'
contract or statutory rights; if the sole purpose of such a declaration is to obtain a money judgment,
immunity is not waived." Id. As for the trial court's reservation of a damages determination, the
court observed that "governmental immunity does not spring into existence when a damages award
is finally made; it shields governments from the costs of any litigation leading up to that goal." Id. 
The supreme court reversed but remanded to the trial court "for further proceedings consistent with
this opinion" to consider the implications of the newly-enacted sections 271.151-.160 of the local
government code, which waives immunity from suit for certain contract claims against
governmental entities. Id. 

 Williams has at least two important potential implications for Whiteaker's claims. 
First, while it did not explicitly address the issue or the implications of prior decisions like Stauffer,
Williams's holding is logically inconsistent with the existence of a general waiver of governmental
immunity for claims arising under chapter 143. See Cassidy, 223 S.W.3d at 614-15 (noting that
"[a]lthough the supreme court did not directly address whether a general waiver of immunity existed
under the civil service statutes, the absence of a general waiver is clearly implied by the outcome"
and observing that outcomes in prior supreme court cases "arguably conflict with the outcome in
Williams"); see also Bell v. City of Grand Prairie, 221 S.W.3d 317, 323 (Tex. App.--Dallas 2007,
no pet.) (suggesting that the "import of the Williams decision" is "that Stauffer and the court's other
opinions reaching the merits under the Civil Service Act were incorrectly decided because the court
lacked jurisdiction"). Second, Williams holds that a declaration of statutory rights concerning an
alleged underpayment of accrued vacation and sick leave owed under chapter 143--a type of back
pay--is a claim for "money damages" that implicates governmental immunity. 

 The City argues that Williams "makes it abundantly clear . . . that a request for back
pay is a request for monetary relief, which requires a finding here that sovereign immunity is
implicated." In Bell, which involved claims that a municipality underpaid firefighters in violation
of section 143.041 of the local government code, the Dallas Court of Appeals viewed Williams as
creating a dichotomy between declaratory and injunctive claims regarding past statutory violations
(which, it concluded, implicate governmental immunity because the "only plausible remedy" is
money damages) and those seeking only to compel the city to follow the law in the future (which,
it held, do not implicate immunity). Bell, 221 S.W.3d at 324-326. Thus, the court held that the
district court had subject-matter jurisdiction over the firefighters' claims to the extent they concerned
future violations and did not seek money damages, but not to the extent the claims concerned past
violations. Id.; see also City of Seagoville v. Lytle, 227 S.W.3d 401, 410-412 (Tex. App.--Dallas
2007, no pet.) (employing similar analysis in holding that declaratory-judgment, mandamus, and
injunctive relief claims alleging termination in violation of local government code sections 614.022
and 614.023 were barred by governmental immunity to the extent they sought back pay or back
benefits, but not to the extent they sought prospective reinstatement only); City of Dallas v. Albert,
214 S.W.3d 631, 633, 637 (Tex. App.--Dallas 2006, pet. filed) (similar analysis in suit alleging
failure to pay police officers and firefighters in accordance with voter-approved pay referendum; suit
barred by governmental immunity to the extent it sought back pay and benefits); City of
Dallas v. Martin, 214 S.W.3d 638, 640, 644 (Tex. App.--Dallas 2007, pet. filed) (same). 

 Whiteaker urges that we should apply the Dallas court's reasoning and hold that, at
a minimum, the district court had subject-matter jurisdiction over his claims to the extent they seek
prospective relief. We agree. Liberally construing his pleadings, Whiteaker seeks both prospective
declaratory, injunctive, and mandamus relief regarding his rights to the promotion from the time of
judgment going forward and retrospective relief regarding his rights to back pay and benefits he
would have received if he had been promoted on April 29, 2006. Whiteaker thus does not have the
"only conceivable remedy" of money damages, see Williams, 216 S.W.2d at 827, because his claims
include a declaration of his statutory rights to the promotion and to compel the City's compliance
with these rights in the future. See Bell, 221 S.W.3d at 324-25. At least to this extent, Whiteaker's
causes of action for declaratory, injunctive, and mandamus relief do not implicate the City's
governmental immunity. City of Seagoville, 227 S.W.3d at 410-412; Albert, 214 S.W.3d at 637;
Martin, 214 S.W.3d at 634; Bell, 221 S.W.3d at 324-25. 


 Does Whiteaker seek money damages? 

 As for the other aspects of his claims, Whiteaker questions the assumption that
requests for back pay or other retrospective monetary relief categorically constitute claims for
"money damages" that implicate governmental immunity. He argues that such awards are not
considered money damages when awarded as equitable relief to prevent unjust enrichment. See, e.g.,
Burrow v. Arce, 997 S.W.2d 229, 245 (Tex. 1999) (characterizing award of money to prevent unjust
enrichment as "an equitable remedy"). In the context of government employment, Texas courts have
distinguished equitable back-pay awards from those constituting money damages based upon the
reasons why the back pay is sought: whether the pay sought is for work actually performed or
services provided to the employer, which is actionable in equity, or is sought to compensate for the
loss of pay resulting from the employee being wrongfully prevented from working for the employer,
which is money damages. See Nueces County v. Ferguson, 97 S.W.3d 205, 220-21 & n.21
(Tex. App.--Corpus Christi 2002, no pet.) ("A claim for back pay, other than one to recover for
services rendered or to prevent unjust enrichment, is a claim for damages at law.") (emphasis
added); O'Bryant v. City of Midland, 949 S.W.2d 406, 414 (Tex. App.--Austin 1997) (op. on reh'g),
aff'd in part and rev'd in part on other grounds, 18 S.W.3d 209 (Tex. 2000) (discussing distinction
between equitable and legal back pay claims and holding that request for back pay for officers who
had been prevented from serving as licensed peace officers was a claim for damages). (15) This
distinction is consistent with the supreme court's recognition, at least historically, that suits to
recover money or other property wrongfully taken or withheld by state officials from their rightful
owners do not implicate sovereign immunity because, in concept, the disputed property never
belongs to the state. Epperson, 42 S.W.2d at 230 (if tax collector is "wrongfully withholding funds"
owed as commission for services provided by private party in collecting delinquent taxes, "action
to compel him to pay the same to a party entitled thereto is not one against the state which can only
be brought with the consent of the state."); see also Dodgen, 308 S.W.2d at 841-41 (distinguishing
Epperson and prior cases on basis that "[i]n that class of cases it is held that suits for property alleged
to be unlawfully or wrongfully withheld from the rightful owners by officers of the state are not suits
against the sovereign itself and may be maintained without permission of the sovereign."); cf. State
v. Lain, 349 S.W.2d 579, 581-82 (Tex. 1961) ("One who takes possession of another's land without
legal right is no less a trespasser because he is a state official or employee, and the owner should not
be required to obtain legislative consent to institute a suit to oust him simply because he asserts a
good faith but overzealous claim that title or right of possession is in the state and that he is acting
for and on behalf of the state . . . . The rationale of the rule is that in such cases possession is not in
fact held for the sovereign but is wrongfully held."). 

 We need not further consider the potential applicability of these principles because
Whiteaker's claims for back pay and back benefits would not be considered an equitable remedy. 
Whiteaker does not seek salary or benefits owed for work he actually performed in the captain
position that became vacant in February 2006, but compensation for salary and benefits of which he
was deprived through the City's allegedly wrongful actions preventing him from working in that
position. See O'Bryant, 949 S.W.2d at 414.

 Whiteaker also suggests that his claims for back pay and back benefits may be 
recoverable through mandamus without implicating governmental immunity Mandamus will issue
to compel a public official to perform a ministerial act--one for which "the law clearly spells out
the duty to be performed by the official with sufficient certainty that nothing is left to the exercise
of discretion." Anderson v. City of Seven Points, 806 S.W.2d 791, 793 (Tex. 1991). Such 
ministerial statutory duties sometimes may entail the payment of money and, as the supreme court
has long recognized, sovereign or governmental immunity does not bar a mandamus action to
compel the performance of such duties. See, e.g., Jernigan v. Finley, 38 S.W. 24, 25 (Tex. 1896). (16) 

 Whiteaker cites City of Waco v. Bittle for the broad principle that governmental
immunity does not bar a mandamus action seeking back pay under chapter 143, nor a declaratory-judgment action to declare the claimant's right to such payment. 167 S.W.3d 20 (Tex. App.--Waco
2005, pet. denied). The implications of Bittle are more limited. Bittle involved a firefighter's
administrative appeal from an indefinite suspension. See Tex. Loc. Gov't Code Ann. §§ 143.052,
.053. In such appeals, as discussed above, chapter 143 explicitly authorizes the award of "full
compensation for the actual time lost as a result of the suspension at the rate of pay provided for the
position or class of service from which the person was suspended." Id. § 143.053(f). The appeal
was heard by an independent hearing examiner, see id. § 143.057, which ordered reinstatement with
back pay, as permitted by section 143.053. Claiming that the city had not paid him the back pay he
had been awarded, the firefighter sued for a declaration that the city had failed to comply with the
hearing examiner's decision and section 143.053(f), coupled with mandamus compelling the city to
pay the back pay and benefits it owed. The court of appeals rejected the city's assertion of
governmental immunity because the firefighter's claims sought to compel the city to comply with
the mandatory requirements of section 143.053(f). Bittle, 167 S.W.3d at 26-27. 

 Contrary to Whiteaker's arguments, Bittle does not suggest that back pay is generally
recoverable through mandamus for chapter 143 violations. The legislature necessarily waived
governmental immunity for administrative back pay awards made by civil service commissions or
hearing examiners under section 143.053(f), and Bittle's holdings must be viewed in that context. 
However, Bittle is consistent with the established principles that mandamus may lie to enforce
ministerial duties of governmental entities to make certain statutorily-required payments and that
such actions do not implicate governmental immunity. Cf. Austin Nat'l Bank of Austin v. Sheppard,
71 S.W.2d 242, 244 (Tex. 1934) (mandamus to enforce payment of claim authorized and
appropriated by legislature).

 On the other hand, Texas courts have long recognized that a department head has a
mandatory, nondiscretionary statutory duty under chapter 143 to fill a vacancy with an eligible
candidate. See Townsend, 622 S.W.2d at 563; Duckett, 495 S.W.2d at 886-87; Klinger, 902 S.W.2d
at 673-74. Under chapter 143, this duty necessarily entails paying the appointee the salary and
benefits attendant to other positions at that classification. Tex. Loc. Gov't Code Ann. § 141.041. 
As we have seen, even while these statutory duties require monetary payments, governmental
immunity does not bar a mandamus action (or a declaratory or injunctive claim) to the extent it seeks
to compel compliance with these statutory duties prospectively. Nor is it clear, under cases such as
Jernigan, or under the contemporary rationales for the doctrine, whether governmental immunity
would, in all circumstances, be implicated by a mandamus action to enforce these mandatory
statutory duties with regard to payments that have already accrued; i.e., to compel both retroactive
promotion and back pay to a position to which a candidate is entitled. Such action would not
necessarily infringe on municipalities' budgetary processes by imposing liability for improvident
actions--the modern focus of sovereign and governmental immunity--but might be said merely to
enforce the previous policy and budgetary decisions of the legislature and the municipal government,
as manifested in the duties imposed by chapter 143, the municipal ordinances creating the classified
positions, and the expressed will of local voters that their fire or police departments should be
governed by chapter 143. 

 Several of the pre-Williams cases Whiteaker cites, while not explicitly addressing
governmental immunity, are consistent with these observations. Among the pre-Williams cases
Whiteaker cites are those involving allegations that a candidate was deprived of a promotion to
which he or she claimed a right under the civil service act and courts have awarded retroactive
promotion and back pay. These cases fall into essentially three distinct categories. The first involves
failure-to-promote claims where a municipality has allegedly failed altogether to fill a vacancy as
required by the civil service act. See, e.g., Townsend, 622 S.W.2d at 563; Duckett, 495 S.W.2d at
886-87; Bullock, 34 S.W.3d at 652; Michna, 521 S.W.2d at 332-35. The second involves failure-to-promote claims where the municipality has allegedly acted wrongfully in attempting to abolish or
replace a classified position with a non-classified one. See Lee, 842 S.W.2d at 649; International
Ass'n of Fire Fighters, Local Union No. 624, 822 S.W.2d at 131-32. The third category involves
not the elimination of a classified position or the failure to fill it, but the promotion of another
firefighter or police officer to a position to which the plaintiff claims entitlement under the act. 
Bostick, 423 S.W.2d at 471-72. The City cites Townsend and Bullock (from the first category) as
support for the proposition that "lawsuits seeking to enforce the mandates of the CSA that do not
request money damages, do not implicate sovereign immunity." 

 We need not decide whether mandamus actions in the first two categories of cases
might survive Williams because Whiteaker's claim falls within the third category, and, we conclude,
this type of claim implicates the City's governmental immunity. Whiteaker's suit, as currently pled,
complains not that the City failed to perform a mandatory statutory duty, but that it performed that
duty improperly--by appointing another candidate to the February 2006 captain vacancy when he
contends that slot should have instead gone to him. In substance, Whiteaker seeks his losses caused
by the City's actions. This is a claim for money damages that implicates the City's governmental
immunity. See Tooke, 197 S.W.3d at 331-32 (governmental immunity serves to "shield the public
from the costs and consequences of improvident actions of their governments"). 

 We conclude that Whiteaker's declaratory, injunctive and mandamus causes of action
implicate the City's governmental immunity to the extent they seek back pay and back benefits
accruing prior to judgment. (17) See City of Seagoville, 227 S.W.3d at 410-412. 


 Does chapter 143 waive immunity for Whiteaker's claims?

 We also conclude that the legislature has not waived the City's governmental
immunity against Whiteaker's claims for back pay and other retrospective monetary relief. 

 We again emphasize the legislature's mandate that, "In order to preserve [its] interest
in managing state fiscal matters through the appropriations process, a statute shall not be construed
as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous
language." Tex. Gov't Code Ann. § 311.034 (West Supp. 2006); see Reata Constr. Corp.,
197 S.W.3d at 375. Whiteaker points out that this principle existed at common law even prior to
section 311.034's enactment, see Taylor, 106 S.W.3d at 696 (citing Duhart v. State, 610 S.W.2d 740,
742 (Tex. 1981)), and that it is not an end in itself, but merely a guide for ascertaining whether the
legislature intended to waive sovereign immunity. See Kerrville State Hosp. v. Fernandez,
28 S.W.3d 1, 3 (Tex. 2000); City of LaPorte v. Barfield, 898 S.W.2d 288, 292 (Tex. 1995). He urges
that even after the enactment of section 311.034, the supreme court has recognized that "clear and
unambiguous" legislative intent to waive immunity need not be explicitly stated in a statute, but may
be inferred "when the provision in question would be meaningless unless immunity were waived." 
Taylor, 106 S.W.3d at 697. Examples include statutes providing claims or right or relief applicable
only against government entities. See Fernandez, 28 S.W.3d at 4-6 ; Barfield, 898 S.W.2d at 295-297; see also Mega Child Care, Inc., 145 S.W.3d at 198. Whiteaker urges that, similarly, his
statutory right to promotion under section 143.036 would be "meaningless" without a right to
recover back pay if he is denied a promotion in violation of the provision. He adds that "six decades
of case law authorizing back pay claims under these statutes" are consistent with this implied
legislative intent because "any other position would mean a city could violate the Civil Service Act
and similar statutes governing only municipalities with impunity and claim that it was
immune from suit." (18)

 We are not persuaded that the legislature has waived the City's governmental
immunity against Whiteaker's claims for back pay and other retrospective monetary relief. Chapter
143 does provide certain administrative and appellate remedies that, to this limited extent, waive its
governmental immunity. See Mega Child Care, Inc., 145 S.W.3d at 198; Funderburk, 188 S.W.3d
at 235-236. Whiteaker has not attempted to bring his claims within these waivers, however. Cf.
Nyborg, 999 S.W.2d at 453-54. We agree with the reasoning of the Dallas Court of Appeals that
Williams is logically inconsistent with the existence of a general waiver of immunity under chapter
143. See Cassidy, 223 S.W.3d at 614; Bell, 221 S.W.3d at 323. Nor can we discern any other basis
in chapter 143--explicit or implicit--for concluding that the legislature clearly and unambiguously
intended to waive governmental immunity against a claim like Whiteaker's in particular.

 Whiteaker's rights under section 143.036 are not rendered "meaningless" if his back
pay claim is barred by governmental immunity. We have held that his prospective claims to enforce
his rights against the City from the time of judgment forward are not barred. Bell, 221 S.W.3d at
325. A claimant like Whiteaker could thus avoid accruing lost pay by promptly seeking to compel
a municipality to comply with section 143.036 once a promotion-related dispute arises. Whiteaker
tacitly acknowledges the availability of such a remedy, urging that a "nightmare" of claimants
seeking temporary restraining orders to prevent disputed promotions from taking effect would result
if governmental immunity bars his back pay claim. Whatever the merits of this remedy as a matter
of policy, its availability compels us to conclude that, as a matter of statutory construction, the
legislature did not evince clear and unambiguous intent to waive the City's governmental immunity
against Whiteaker's claims for retrospective monetary relief outside any administrative remedies
provided in chapter 143. 

 

 Disposition of governmental immunity issues

 In summary, we have concluded that Whiteaker's claims do not implicate the City's
governmental immunity to the extent they seek prospective declaratory, injunctive and mandamus
relief from the date of judgment forward. We also hold that, as pled, Whiteaker's claims are barred
by governmental immunity to the extent they seek back pay, back benefits, other retrospective 
monetary relief, or declarations or orders directed to such relief. 

 Where, as here, we conclude that a plaintiff's pleadings do not contain sufficient facts
to affirmatively demonstrate the trial court's jurisdiction over all or part of a suit, our proper remedy
depends upon whether that jurisdictional defect can be cured. We must affirm the district court's
denial of the City's plea to the jurisdiction if the pleadings do not affirmatively demonstrate
incurable defects in jurisdiction. Miranda, 133 S.W.3d at 226-27. In such an instance, the proper
remedy is not to dismiss but to afford Whiteaker the opportunity to amend. Id. 

 We conclude that Whiteaker is entitled to the opportunity to amend. His pleadings
and affidavit testimony allude to facts suggesting an alternative theory for seeking retroactive
promotion to a captain position and back pay that might not implicate the City's governmental
immunity. Specifically, Whiteaker alleges and testifies that (1) on January 14, 2006, Captain Billy
Wusterhausen, who occupied one of the two captain positions in the training division, was promoted
to battalion chief, thus creating another captain vacancy in training; (2) Captain Johnnie Bohac, who
originally had been promoted from the October 2005 promotional eligibility list to fill a captain slot
in suppression, began working in the vacant captain position in the training division; (3) Captain
Bohac continues to work in that position. The effect of these actions, Whiteaker suggests, has been
to create another captain vacancy in suppression. There is no indication in the record that this
alleged vacancy in suppression has ever been filled. Depending on the timing of this alleged
vacancy, whether it was ever filled, and the merits of Whiteaker's contentions regarding his rights
under section 143.036, Whiteaker may be able to state the type of claim presented in Townsend and
Duckett. See, e.g., Townsend, 622 S.W.2d at 563; Duckett, 495 S.W.2d at 886-87; Bullock,
34 S.W.3d at 652; Michna, 521 S.W.2d at 332-35. We hold that Whiteaker is entitled to the
opportunity to replead, if possible, to state such a claim. Again, we express no opinion at this
juncture regarding whether this specific type of claim would implicate the City's governmental
immunity under Williams and other applicable law, as the parties have not yet briefed or developed
that issue. We leave that question for further development on remand. See Hendee, 228 S.W.3d at
383; Davis, 137 S.W.3d at 335 & n.16. 

 On this basis, the district court would not have erred in denying the City's plea to the
jurisdiction regarding governmental immunity. We accordingly overrule, in their entirety, the City's
governmental immunity issues.

 

Exhaustion of remedies

 The City asserts, "in the alternative," that the district court lacked subject-matter
jurisdiction because Whiteaker failed to exhaust administrative remedies with the Commission
before filing suit. We disagree.

 Our analytical starting point regarding this issue is article V, section 8 of the Texas
Constitution. It provides that a district court's jurisdiction "consists of exclusive, appellate, and
original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive,
appellate, or original jurisdiction may be conferred by this Constitution or other law on some other
court, tribunal, or administrative body." Tex. Const. art. V, § 8. The legislature has provided by
statute that district courts possess "the jurisdiction provided by Article V, Section 8, of the Texas
Constitution," and "may hear and determine any cause that is cognizable by courts of law or equity
and may grant any relief that could be granted by either courts of law or equity." Tex. Gov't Code
Ann. § 24.007-.008. Thus, "[c]ourts of general jurisdiction presumably have subject matter
jurisdiction unless a contrary showing is made." Subaru of Am., Inc. v. David McDavid Nissan, Inc.,
84 S.W.3d 212, 220 (Tex. 2002). 

 Unlike courts, "there is no presumption that administrative agencies are authorized
to resolve disputes. Rather, they may exercise only those powers the law, in clear and express
statutory language, confers upon them." David McDavid Nissan, 84 S.W.3d at 220. "Courts will
not imply additional authority to agencies, nor may agencies create for themselves any excess
powers." Id. The courts are not divested by an agency of the subject-matter jurisdiction they would
otherwise possess to adjudicate a dispute unless the legislature has granted the agency exclusive
jurisdiction, or the sole power to make the initial determination in the dispute. Id. at 221; Bexar
Metro. Water Dist. v. City of Bulverde, 156 S.W.3d 79, 90 (Tex. App.--Austin 2004, pet. denied).

 If an administrative agency has exclusive jurisdiction over a determination, a party
must exhaust all administrative remedies before seeking judicial review of the agency's decision. 
See Thomas v. Long, 207 S.W.3d 334, 340 (Tex. 2006). Until the party has satisfied this exhaustion
requirement, the trial court lacks subject-matter jurisdiction and must dismiss those claims without
prejudice to refiling. Id. Whether an agency has exclusive jurisdiction is determined by construction
of the relevant statutory scheme. See id. The legislature's intent to grant an agency the sole
authority to make the initial determination in a dispute may be reflected in either express statutory
language to that effect or the overall statutory scheme. Id. at 340-42.

 In Stauffer, as previously noted, the supreme court held that the legislature has not
delegated civil service commissions general authority to decide issues affecting rights under chapter
143. 344 S.W.2d at 160. To the contrary, the court held, the legislature had authorized only (1) "a
hearing and decision by the Commission whenever a department head is dismissed . . . or an officer
is indefinitely suspended," (2) "[a] hearing . . . before an employee is demoted," (3) appeals by "any
applicant who is dissatisfied with the grading of his examination," and (4) "[p]ower to review the
action of a department head in passing over candidates with higher grades or in ordering a
disciplinary suspension. Id.; see Tex. Loc. Gov't Code Ann. §§ 143.034, .036, .052-.054; Corbitt,
941 S.W.2d at 355 n.1. Other issues arising under chapter 143, the court reasoned, remained within
the district court's general jurisdiction (as opposed to that of the commission) under
article V, section 8. Stauffer, 344 S.W.2d at 161; cf. Bexar Metro. Water Dist., 156 S.W.3d at 90. 
We are bound to follow this explicit holding regarding the scope of commission jurisdiction unless
and until the supreme court instructs us otherwise.

 The City condemns Whiteaker for "laying behind the log" after the Commission
created the April 2006 promotion eligibility list and began making promotions from it, suggesting
that he should have instead of filed a complaint regarding these actions with the Commission. But
the City fails to identify any specific statute giving the Commission exclusive jurisdiction over the
issues Whiteaker has raised. See Stauffer, 344 S.W.2d at 160. 

 Terming it "an exclusive remedy" for "dispute[s] aris[ing] in regard to the creation
of an eligibility list," the City first points to the administrative appeal under section 143.034, but this
provision is explicitly limited to disputes concerning the grading of promotional exams. See
Tex. Loc. Gov't Code Ann. § 143.034(a). In its reply brief, the City, similarly unpersuasively,
attempts to pigeonhole Whiteaker's allegations into two other administrative remedies under chapter
143. It suggests that Whiteaker was required to exhaust the remedy provided under section 143.036,
which authorizes a bypassed top candidate on a promotion list to seek commission review of the
department head's proffered reasons for refusing the promotion. Id. § 143.036(f). But, just as in
Duckett, it is undisputed that Chief Hodge "did not purport to invoke this statutory procedure for
rejecting [Whiteaker] as an otherwise eligible person," Duckett, 495 S.W.2d at 887, but took the
position that Whiteaker's right to a promotion had been exhausted. The City also suggests that
Whiteaker is challenging an involuntary demotion, see Tex. Loc. Gov't Code Ann. § 143.054, but,
again, Hodge's actions did not implicate the asserted administrative remedy. Department heads
cannot unilaterally demote, but may only recommend and request in writing that the civil service
commission take such an action. Id. § 143.054(a)-(b). If the commission believes that probable
cause exists for ordering the demotion, it must give the affected firefighter or police officer notice
and an opportunity for "a full and complete public hearing." Id. § 143.054(c)-(d). Leaving aside the
factual disputes concerning whether Whiteaker was promoted or subsequently "demoted," any
actions by Hodge potentially constituting a "demotion" were undisputedly not made in accordance
with the procedures for involuntary demotions, and Whiteaker did not fail to exhaust any
administrative remedies that would have applied in such a case. Cf. Duckett, 495 S.W.2d at 887.

 We overrule the City's exhaustion-of-remedies issue. 


CONCLUSION

 We have overruled the City's issues concerning standing and exhaustion of remedies. 
While Whiteaker's suit as pled is barred by governmental immunity to the extent it seeks back pay
or other retrospective monetary relief, we conclude that he is entitled to an opportunity to replead 
his claims. On this basis, we overrule the City's issues regarding governmental immunity and affirm
the district court's order denying the City's plea to the jurisdiction. 


__________________________________________

 Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop;

 Concurring Opinion by Justice Patterson


Affirmed

Filed: September 14, 2007
1. 216 S.W.3d 827 (Tex. 2007). 
2. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2006). 
3. The following discussion references requirements in chapter 143 applicable to
municipalities, like the City, with a population of less than 1.5 million. Somewhat differing
requirements apply to municipalities with larger populations. 
4. Earlier versions of the civil service act mandated a 90-day period within which to fill
vacancies rather than the current 60-day period. Compare Act of July 5, 1949, 51st Leg., R.S., ch.
572, § 2, sec. 8, 1949 Tex. Gen. Laws 1114, 1115 (90-day period) with Act of May 28, 1979, 66th
Leg., R.S., ch. 753, § 3, sec. 8, 1979 Tex. Gen. Laws 1856, 1857 (60-day period). Hence, pre-1979
cases refer to the former 90-day requirement. See Duckett v. City of Houston, 495 S.W.2d 883, 887
(Tex. 1973); Michna v. City of Houston, 521 S.W.2d 331, 335 (Tex. Civ. App.--Houston [1st Dist.]
1975, no writ).
5. The City's fire department civil service classifications include, in ascending rank order,
Fire Fighter, Lieutenant, Captain, Battalion Chief, Deputy Chief, and Fire Chief. 
6. On October 12, Chief Hodge sent a memorandum to each of the top eleven captain
candidates on the promotion eligibility list, including Whiteaker, titled "Conditional Offer of
Promotion." In this document, Hodge stated that, "I am pleased to offer you a promotion to the rank
of Captain . . . effective at 0700 am on October 22, 2005." Hodge further stated that, "With your
acceptance of this offer of promotion, you agree to accept [any] and all assignments for Captain in
the Round Rock Fire Department as assigned by the Fire Chief for the duration of such assignments
as determined by the Fire Chief." 
7. Whiteaker pled and produced jurisdictional evidence concerning a December 2005 meeting
involving him, the president of the Round Rock Firefighters Association, the Association's attorney
(also his attorney in this proceeding), Chief Hodge, and the city attorney. Whiteaker and the
Association had requested the meeting "concerning my status as a candidate for promotion to the
rank of Captain." During this meeting, Hodge stated his concern that he would be unable to fill the
captain position in training if firefighters on the promotion eligibility list could voluntarily decline
promotion to that position. The Association responded by offering to conduct a survey of lieutenants
to determine if any would be willing to accept positions in training. According to Whiteaker, "The
meeting ended without any resolution as to whether or not I remained on the promotion
eligibility list." 


 Following the meeting, the Association conducted the survey and, on December 31, its
attorney emailed the city attorney stating that two lieutenants were willing to accept positions in
training. Around the same time, in response to an inquiry from Chief Hodge, the Association's
president restated its position that Whiteaker's decision to decline to be promoted to the captain
position in training did not require his removal from the promotional eligibility list. 
8. As noted, Hodge's January 25 memorandum stated that Whiteaker was promoted to
Captain "effective 8:00 am Saturday, January 28, 2006." Hodge's subsequent demotion of Whiteaker
was made "effective at 0701 hours January 28, 2006." 
9. The City does not appear to dispute that the UDJA would waive its governmental
immunity on Whiteaker's attorney's fees claim under its declaratory-judgment action, see Texas
Educ. Agency v. Leeper, 893 S.W.2d 432, 445-46 (Tex. 1994), but disputes whether the district court
has subject-matter jurisdiction over this cause of action. 
10. These principles and rationales are further illustrated by the supreme court's jurisprudence
regarding contract claims against governmental entities. Sovereign or governmental immunity has
long been held to extend to "suits against . . . officials seeking to establish a contract's validity, to
enforce performance under a contract, or to impose contractual liabilities." Texas Natural Res.
Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855-56 (Tex. 2002); see W.D. Haden Co.
v. Dodgen, 308 S.W.2d 838, 840 (Tex. 1958); Herring v. Houston Nat'l Exch. Bank, 253 S.W. 813,
814 (Tex. 1923). The court recently explained that "we defer to the Legislature to waive immunity
from contract claims because:" 



· the handling of contract claims against the government involves policy
choices more complex than simply waiver of immunity, including whether
to rely on administrative processes and what remedies to allow;


· the government should not be kept from responding to changing conditions
for the public welfare by prior policy decisions reflected in long-term or
ill-considered obligations;


· the claims process is tied to the appropriations process, and the priorities that
guide the latter should also inform the former; and


· the Legislature is able to deal not only with these policy concerns but also
with individual situations in deciding whether to waive immunity by
resolution, cases by case, or by statute. 


In sum, in the contract-claims context, legislative control over sovereign immunity
allows the Legislature to respond to changing conditions and revise existing
agreements if doing so would benefit the public.

 


Tooke, 197 S.W.3d at 332 (citations and quotations omitted).
11. See also McLane Co. v. Strayhorn, 148 S.W.3d 644, 649-51 & n.6 (Tex. App.--Austin
2004, pet. denied) ("A suit that seeks to control a state official's exercise of discretion within her
legal authority is a suit to control state action and cannot be maintained without legislative
permission"; holding that because challenged actions were within comptroller's discretionary
statutory authority, UDJA claim "is seeking to control state action and is a suit against the state");
James L. Hartsfield, Jr., Governmental Immunity From Suit and Liability in Texas, 27 Tex. L. Rev.
337, 338 (1949) ("Generally speaking, the rule is that a suit against an officer or department or
agency of the state, the purpose or effect of which is to impose liabilities upon, or enforce liabilities
against, the state, is in effect a suit against the state, and therefore cannot be maintained without the
consent of the sovereign, expressed through legislative action. The prohibition likewise includes
actions to require state officers or agencies to perform, or refrain from performing, purely
governmental functions, involving their discretion, as distinguished from private acts of
individuals.") (quoting San Antonio Indep. Sch. Dist. v. Bd. of Educ., 108 S.W.2d 445
(Tex. Civ. App.--San Antonio 1937, no writ). 
12. In other words, the question of immunity substantially overlaps the merits of the complaint
that a state official has exceeded his statutory authority. Cf. Texas Dep't of Parks &
Wildlife v. Miranda, 133 S.W.3d 217, 227-28 (Tex. 2004) (regarding whether parks and wildlife
department acted with gross negligence so as to waive sovereign immunity under the recreational
use statute). 
13. See also Tex. Loc. Gov't Code Ann. § 143.009(a) (authorizing commission or a designated
commission member to "investigate and report on all matters relating to the enforcement and effect
of this chapter . . . and shall determine if the chapter and rules are being obeyed").
14. See City of Houston v. Duckett, 486 S.W.2d 871, 872 (Tex. Civ. App.--Houston
[14th Dist.] 1972, writ granted) (noting that trial court judgment later affirmed by supreme court
included "pay[ing] back unpaid money above his then salary accruing from [90 days after date of
vacancy] plus interest thereon"). 
15. This Court explained the distinction in O'Bryant, in the context of a constitutional claim:



[T]o determine whether the officers' request for back pay under the constitution is
an equitable claim, we look to the general distinction between actions at law and
actions in equity. Because Texas courts today may entertain both types of actions in
one lawsuit, the distinction is difficult to discern in modern caselaw. Historically, the
difference between the two types of actions depended upon the nature of the relief
desired. Typically, an action "at law" is one brought for a money judgment while an
action "in equity" is one brought for other types of relief, such as injunction, specific
performance, rescission, or cancellation. It is also instructive to look to the parties'
characterization of the relief sought in their pleadings to determine the legal character
of an action. 


 In light of these principles, we conclude the officers' request for back pay for
violations of their constitutional rights is essentially an action at law. The officers
do not seek money to compensate them for services rendered; nor do they seek to
prevent the defendants from being unjustly enriched. Instead, they seek money
because they were prevented from conferring a certain type of benefit to the
defendants (i.e. serving as licensed police officers), a theory not based in traditional
equitable principles. Our conclusion is consistent with the general rule that an action
for monetary relief is an action at law rather than in equity. . . . 



Id. (citations omitted).
16. In Jernigan, a county treasurer sought mandamus from the supreme court to compel the
comptroller to make statutorily-required pro rata distributions from school fund revenues. 38 S.W.
24, 25 (Tex. 1896). Rejecting the attorney general's argument that the suit was barred by sovereign
immunity, the court reasoned that, upon the local authority's satisfaction of the statutory conditions
for payment:



it becomes the plain duty of the comptroller to draw his warrant for the sum so
apportioned. It is an imperative obligation, enjoined upon him by the lawmaking
power of the state. In pursuance of the power conferred upon it by amended section
3 of article 5 of the constitution, the legislature has given this court jurisdiction to
issue the writ of mandamus against any state officer, the governor excepted; that is,
it has authorized a suit against any such officer to compel him to perform the duties
imposed upon him by law. It can hardly be said that such a suit is one against the
state; but, if it be such in any sense, it is, nevertheless, proper and maintainable,
because the state has authorized it to be brought. It is otherwise when the legislature
has not enjoined [required] the performance of the act, and the interests of the state,
either in its property or funds, would be injuriously affected by awarding the writ.

 


Id. at 25; see Laidlaw Bros. v. Marrs, 273 S.W. 789, 792 (Tex. 1925) (quoting this holding of
Jernigan and stating that "[t]his holding is clearly correct, and has been so uniformly applied by this
court that seldom is the question raised or referred to in the cases"). See also Jessen Assocs.
v. Bullock, 531 S.W.2d 593, 601 (Tex. 1975) (orig. proceeding); Cramer v. Sheppard,
167 S.W.2d 147, 156 (Tex. 1942) (orig. proceeding); Carpenter v. Sheppard, 145 S.W.2d 562, 569
(Tex. 1940); Burttschell v. Sheppard, 69 S.W.2d 402, 404 (Tex. 1934); Woods v. Terrell, 285 S.W.
293, 295 (Tex. 1926); Freeman v. Terrell, 284 S.W. 946, 949 (Tex. 1926); Fulmore v. Lane,
140 S.W. 405, 412 (Tex. 1911); Terrell v. Sparks, 135 S.W. 519, 522 (Tex. 1911);
Escavaille v. Stephens, 119 S.W. 842, 843 (Tex. 1909).
17. The same would be true for interest awarded on these sums. 
18. Whiteaker also attaches importance to City of Sweetwater v. Waddell, 218 S.W.3d 80, 81
(Tex. 2007), which was decided after Williams. In Waddell, a group of firefighters alleged that the
city had failed to promote Waddell in accordance with section 143.036 and failed to pay each of
them the same base salary as required by section 143.041. They sought a declaration that the city
had violated these provisions, an order to promote Waddell, and "monetary damages." The city
asserted a plea to the jurisdiction based on governmental immunity, which the trial court granted. 
The court of appeals reversed, holding the governmental immunity was waived by "sue and be sued"
language in the city charter. The supreme court reversed in light of Tooke and remanded to the trial
court. 218 S.W.3d at 81. "On remand," the supreme court instructed, "the trial court may consider,
among other things, whether the City's immunity from suit is waived by sections 271.151-.160 of
the Local Government Code or other statutory provisions." Id. (emphasis added). At most,
Waddell may imply that the supreme court has not squarely decided whether chapter 143 waives
governmental immunity as to claims under section 143.036 or section 143.041, but it provides no
particular guidance for resolving such issues.