# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00518-CV

**Thomas A. Davis, Jr. and Texas Department of Public Safety/Lon Burnam, Appellants**

**v.**

**Lon Burnam/Thomas A. Davis, Jr. and Texas Department of Public Safety, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. GN-301665, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING**

## O P I N I O N

The parties in this case present two issues concerning pleas to the jurisdiction. First, we will decide whether a court has jurisdiction to issue a declaratory judgment concerning an alleged destruction of state records. Second, we will analyze the proper procedure to follow after a court denies a plea to the jurisdiction on a question of statutory construction.[1] For the reasons stated below, we reverse the judgment of the district court in part, vacate in part, and remand for further proceedings.

---

[1] The Department of Public Safety also asks us to construe a statute regarding its power to arrest. As we will explain below, we decline to address this issue at this time.

# BACKGROUND

On May 12, 2003, the Texas House of Representatives convened and was called to order by the speaker. The House roll was called, and a quorum was not present.[2] Missing from the chamber were 51 members, including Lon Burnam, an elected member of the House of Representatives from District 90.[3] House members in attendance in Austin, relying on House rules, ordered a call of the House to secure a quorum.[4]

---

[2] The Texas Constitution requires the presence of two-thirds of each house of the legislature to constitute a quorum to do business. Tex. Const. art. III, § 10. A smaller number of members of a house may compel the attendance of absent members of that house in such a manner and under such penalties as that house may provide. *Id*.

[3] District 90 is located in the Fort Worth area.

[4] The House rules provide:

Motion For Call Of The House—It shall be in order to move a call of the house at any time to secure and maintain a quorum for one of the following purposes:

(1) for the consideration of a specific bill, resolution, motion, or other measure;

(2) for the consideration of any designated class of bills; or

(3) for a definite period of time.

Motions for, and incidental to, a call of the house are not debatable.

Tex. H.R. Rule 5, § 7, 78th Leg., R.S., 2003 H.J. of Tex. 67, 68.

Securing A Quorum—When a call of the house is moved for one of the above purposes and seconded by 15 members (of whom the speaker may be one) and ordered by a majority vote, the main entrance to the hall and all other doors leading out of the hall shall be locked and no member permitted to leave the house without the written permission of the speaker. The names of members present shall be recorded. All absentees for whom no sufficient excuse is made may, by order of a majority of those present, be sent for and arrested, wherever they may be found, by the sergeant-at-arms or an officer appointed by the

2

As a result, the sergeant-at-arms asked Thomas A. Davis, the director of the Texas Department of Public Safety (the Department), to secure the attendance of the absent House members. On May 12 and May 13, employees of the Department were directed to locate and apprehend Burnam and his colleagues and return them to the Capitol so that the House could secure a quorum. *See* Tex. H.R. Rule 5, § 7, 78th Leg., R.S., 2003 H.J. of Tex. 67, 68. At that time, Burnam and the other fifty House members were in Ardmore, Oklahoma. Their intent was to break quorum in the House to prevent a vote on proposed Texas Congressional district boundaries then on the legislative agenda. Burnam and the other House members returned to Texas of their own accord on May 14.

On May 20, Burnam and two other House members requested documents from the Department regarding its efforts to locate them during their absence from the House. *See* Tex. Gov't Code Ann. §§ 552.001-.353 (West 1994 & Supp. 2004). In particular, they requested

> all documents regarding the Legislators not attending the legislative session May 12 to 15, including but not limited to information regarding their location, procedures used to investigate their location, interviews with legislative staff and/or spouses or

> sergeant-at-arms for that purpose, and their attendance shall be secured and retained. The house shall determine on what conditions they shall be discharged. Members who voluntarily appear shall, unless the house otherwise directs, be immediately admitted to the hall of the house and shall report their names to the clerk to be entered in the journal as present.
>
> Until a quorum appears, should the roll call fail to show one present, no business shall be transacted, except to compel the attendance of absent members or to adjourn. It shall not be in order to recess under a call of the house.

*Id*. § 8, 78th Leg., R.S., 2003 H.J. of Tex. 67, 68-69.

3

other persons to investigate their location, and communication with the federal Department of Homeland Security pertaining to the Legislators.

On May 22, Burnam amended the request:

This morning I became aware from media reports and confirmation by [the Department's] office that destruction of documents relating to my inquiry occurred last week. Unfortunately I have now become aware through a reliable source that document destruction continued last night. . . . Please provide me with the name of any Department of Public Safety employees involved directly or indirectly in the destruction of documents since May 12th. Additionally, I hereby request copies of any and all documents relating to:

(1) all written policies of DPS relating to document retention;

(2) all written policies of DPS relating to document destruction;

(3) any and all documents, electronic data, etc. relating to document destruction which [sic] between May 13, 2003 and the date of this letter;

(4) all documents relating to or reflecting communications by and between DPS (or any civilian or non-civilian employee of DPS) and the Office of Homeland Security;

(5) all documents reflecting any and all contact with any companies and/or individuals who have, at any time in the past, been employed by or consulted by DPS relating to computer security, computer reconfiguration, computer hard disc "clean up"; computer hard disc replacement, or any facet of network or individual computer hardware/software modification, restoration, backup systems, etc.

It is the intent of the undersigned to request any and all information that would relate, directly or indirectly, to the alleged destruction of documents by DPS or any employee, consultant or agent thereof from May 13, 2003 to present, and to obtain copies of all documentation that would reflect that document destruction since May 13, 2003, is not in accordance with normal operating procedures of DPS, regardless of how the above requests are phrased.

4

On May 22, Burnam filed suit in district court, seeking an injunction ordering the Department to cease the alleged destruction of documents, a declaratory judgment concerning the Department's ministerial duties to retain documents, and a writ of mandamus ordering production of all the requested documents.[5]  *See* Tex. Gov't Code Ann. §§ 552.321, .3215 (West Supp. 2004) (suits concerning production of documents).  In response, the Department filed a general denial.  On June 5, the Department submitted a plea to the jurisdiction on two grounds.  First, it asserted that the case was not ripe at the time filed because the Department had neither, within a reasonable period of time, refused to request an opinion of the attorney general nor refused to supply the information in conflict with an attorney general determination.  *See id*. § 552.321.  Second, it argued that the case was moot because at that point it had given Burnam all documents in its possession related to the request and because Burnam "has established no basis to assert that documents were destroyed after the May 19 request."

On June 12, Burnam amended his pleading to include a request for a declaration that the Department lacked statutory authority to search for or attempt to arrest members of the House of representatives when requested by the House sergeant-at-arms.[6]  He also invoked the court's jurisdiction under chapter 441 of the government code.  *See id*. § 441.185, .187 (West 1998 & Supp. 2004) (destruction of state records).  The Department then amended its plea to the jurisdiction by

---

[5] The court granted a temporary restraining order on May 22.

[6] *See* Tex. Gov't Code Ann. § 411.002(a) (West Supp. 2004) (The Department "is an agency of the state to enforce the laws protecting the public safety and provide for the prevention and detection of crime."); *id*. § 411.022 (West 1998) (Texas Rangers are governed by law defining powers and duties of sheriffs); *id*. § 411.032 (members of Texas Highway Patrol have powers and authority of Texas Rangers); *see also* Tex. Loc. Gov't Code Ann. § 85.022 (West 1999) (sheriffs to execute process issued by Speaker of House).

adding the argument that the suit is barred by the doctrine of sovereign immunity.[7] The district court heard argument on the plea to the jurisdiction on June 13. On August 4, the court granted the plea to the jurisdiction concerning document production and destruction, stating that those claims were moot. It denied the plea on the question of the statutory authority of the Department[8] and declared that the Department lacked statutory authority to arrest House members in response to a call for quorum. Both parties have appealed.

## DISCUSSION

### *Destruction of Documents Claim*

On appeal, Burnam presents one issue, in which he claims that the district court erred in granting the Department's plea to the jurisdiction on the question of whether the Department destroyed documents in violation of statutory guidelines. *See* Tex. Gov't Code Ann. § 552.351 (West Supp. 2004); *see also id*. §§ 441.185, .187, 552.321, .3215. In its plea to the jurisdiction and on appeal, the Department argues that the claim is barred by sovereign immunity. The district court ruled that this claim was moot. We will first address sovereign immunity and then turn to mootness.

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *Texas State Employees*

---

[7] *See Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Texas Dep't of Pub. Safety v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

[8] The district court decided that the authority of the Department to arrest missing House members is one of the statutory authority of the Department, not a political question.

*Union/CWA Local 6184 v. Texas Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex. App.—Austin 2000, no pet.). In order to prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *See id.* Because subject-matter jurisdiction presents a question of law, we review the district court's decision *de novo. Id.* In reviewing a trial court's ruling on a plea to the jurisdiction, we do not look at the merits of the case; rather, we "construe the pleadings in favor of the plaintiff," look to the pleader's intent, and accept the pleadings' factual allegations as true. *Texas Ass'n of Bus.*, 852 S.W.2d at 443.

The Uniform Declaratory Judgments Act is a remedial statute designed to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 1997). Declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446). Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Such suits are not "suits against the State," which would generally be barred by the doctrine of sovereign immunity, but rather suits to compel state officers to act within their official capacity. *Id.* Thus, such declaratory-judgment actions against state officials are not barred. *Id.*

7

Chapter 441 of the Texas Government Code controls, among other things, the Texas State Library and Archives Commission and the preservation of the state's public records. *See* Tex. Gov't Code Ann. §§ 441.180-.203 (West 1998 & Supp. 2004). A "state record" is a "document, book, paper, photograph, sound recording, or other material, regardless of physical form or characteristic, made or received by a state department or institution according to law or in connection with the transaction of official state business." *Id.* § 441.031 (West Supp. 2004).[9] A state record may not be destroyed by a state agency "if any litigation, claim, negotiation, audit, open records request, administrative review, or other action involving the record is initiated" before the record would be legally eligible for destruction. *Id.* § 441.187(b) (West 1998).

In this case, Burnam amended his petition on June 13 to add the claim that the Department was acting outside of its statutory authority by destroying state records while not complying with the requirements of section 441.187.[10] His open records request was pending at that time.[11] Although that section does not provide an enforcement mechanism,[12] declaratory relief is

---

[9] Sections 441.001 through 441.016 set out the structure and general powers and duties of the commission. Sections 441.031 through 441.039 govern the retention of public records.

[10] No party argues that the district court abused its discretion in holding a hearing on the plea to the jurisdiction on June 13. *See Texas Dep't of Parks & Wildlife v. Miranda*, 47 Tex. Sup. Ct. J. 386, 392, 2004 Tex. LEXIS 304 (April 2, 2004).

[11] The Department claims to have handed over all documents at the hearing on June 13. Because that fact has not been established by a fact finder, the Department's facial assertion on its own is not evidence that Burnam's open records request was not still pending.

[12] The penal code provides for criminal penalties for destruction of a government record. *See* Tex. Pen. Code Ann. § 37.10(a)(3) (West Supp. 2004). Legally authorized record destruction is exempt from criminal sanction. *See id.* § 37.10(b). Burnam is not seeking to impose criminal sanctions under the penal code but to compel department performance with chapter 441.

8

appropriate in order to compel the Department to act within the requirements of the statute. *See IT-Davy*, 74 S.W.3d at 855; *see also* Tex. Gov't Code Ann. §§ 441.180-.203. The court's jurisdiction, then, originated in the allegation that the Department was not complying with its statutory duty. *See Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 154 (Tex. App.—Austin 1998, no pet.). Because the request sought both to prevent the further destruction of documents and to establish a violation of chapter 441 by a state official, the suit was not barred by sovereign immunity.[13]

We now turn to the claim that this portion of the case was moot. The mootness doctrine dictates that courts avoid rendering advisory opinions by only deciding cases that present a "live" controversy at the time of the decision. *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988). A case becomes moot when: (i) it appears that one seeks to obtain a judgment on some controversy, when in reality none exists; or (ii) when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy. *Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d

---

[13] The Department offers two additional arguments to support the ruling of the district court. First, it asserts that Burnam's claim is procedurally premature because he brought this suit within ten days of filing his open records request and that the proper remedy for a violation of open-records procedures is by writ of mandamus. *See* Tex. Gov't Code Ann. §§ 552.221, .321, .3215 (West Supp. 2004); *see also Dominguez v. Gilbert*, 48 S.W.3d 789, 796 (Tex. App.—Austin 2001, no pet.) (reserving judgment on availability of declaratory judgment for section 552.3215 claims). Second, it points out that the open records act provides for criminal penalties for the destruction of documents. *See id*. § 552.351 (West Supp. 2004). Thus, it argues that only a criminal prosecutor has authority to pursue a claim that a state agency has destroyed documents. *See Sheppard v. Alaniz*, 303 S.W.2d 846, 849 (Tex. Civ. App.—San Antonio 1957, no writ). Because we decide that a declaratory-judgment action is appropriate under chapter 441 of the government code, we need not consider the remedies available under chapter 552. We emphasize, however, that we are not considering the merits of Burnam's claim. Instead, we are deciding only that Burnham satisfied the jurisdictional hurdle for the district court to consider the merits under chapter 441. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

841, 846-47 (Tex. App.—Austin 2002, no pet.).  Cases may become moot when the allegedly wrongful behavior has ended and could not be expected to recur.  *Securities & Exch. Comm'n v. Medical Comm. for Human Rights*, 404 U.S. 403, 406 (1972); *see also Reyna v. City of Weslaco*, 944 S.W.2d 657, 662 (Tex. App.—Corpus Christi 1997, no writ).

We have already established that a controversy exists—whether the Department destroyed documents in violation of chapter 441.  Thus, we will now consider the Department's argument that the case is moot.  *See Medical Comm. for Human Rights*, 404 U.S. at 406.  In this case, Burnam supported his pleading with deposition testimony that the Department was destroying documents.  Although the Department maintains that it has turned over all relevant documents currently in its possession, that assertion, if true, does not address whether it had destroyed any documents in the first place.  Thus, the substantive question at issue in this case would remain unanswered.  The Department also asserted that it never destroyed any documents.  However, that assertion is self-serving and remains an open fact question.

In addition, whether the Department ceased the alleged document destruction when the open-records request was made or even when the suit was filed does not answer the mootness question.  Although the action—the destruction of documents—constitutes a portion of the harm in this case, the substance of the harm arises from the ongoing unavailability of the allegedly destroyed documents.  Thus, this case would be moot only when allegedly destroyed documents were identified and reconstructed[14] rather than when document destruction ceased.

---

[14] This fact, if disputed, would directly concern the merits of the claim, and it would thus be inappropriate for the district court to determine this issue in a plea to the jurisdiction.  *See Miranda*, 47 Tex. Sup. Ct. J. at 392.

10

Even if we focused only on the harm of the alleged act of the destruction of documents rather than on its result, this case would not be moot under the "capable of repetition, yet evading review" exception to the mootness doctrine. To invoke the exception, a plaintiff must prove that: (1) the challenged action was too short in duration to be litigated fully before the action ceased or expired; and (2) a reasonable expectation exists that the same complaining party will be subjected to the same action again. *See Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975); *Williams v. Huff*, 52 S.W.3d 171, 184 (Tex. 2001); *Blum v. Lanier*, 997 S.W.2d 259, 264 (Tex. 1999); *General Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990).

As to the first prong, if a state agency were to destroy documents in violation of a statute, that agency would always be able to cease the destruction before a party would be able to fully litigate a challenge to its actions. In this case, Burnam requested documents on May 19 and then filed suit on May 22. If the Department were destroying documents, it could have immediately ceased doing so the very minute it received notice of the suit. Thus, Burnam would never have an opportunity to fully litigate his claim. As to the second prong, if the Department were destroying documents, it would be free to resume the destruction after receiving a ruling that the case was moot but before fully responding to the open records request. The central issue in this case meets the standards of the "capable of repetition, yet evading review" exception to the mootness doctrine.

We hold that the issues presented under chapter 441 are not moot and are not barred by the doctrine of sovereign immunity. We sustain Burnam's issue on appeal.

11

*The Department's Statutory Authority*

The Department raises two issues on appeal. First, it maintains that the district court erred in its ruling that the Department does not have the statutory authority to arrest absent House members on request of the speaker. Second, it argues that the court erred by ruling on the merits at the same time that it denied the plea to the jurisdiction. Because the district court ruled on an issue of statutory construction in a hearing on a plea to the jurisdiction, the Department asks us to consider the relationship between the *scheduling* discretion of the trial court for a hearing on a plea to the jurisdiction and the rights of parties to fair *notice* that they must argue the merits of their case. We will begin with the Department's second issue.

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action whether or not the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The claims may form the context in which a dilatory plea is raised, but the plea should be decided without delving into the merits of the case. *Id*. The purpose of a dilatory plea is to establish a reason why the merits of the plaintiffs' claims should never be reached. *Id*.

A jurisdictional challenge may implicate the merits of the plaintiff's cause of action. *See Texas Dep't of Parks & Wildlife v. Miranda*, 47 Tex. Sup. Ct. J. 386, 390-93, 2004 Tex. LEXIS 304 (April 2, 2004). Nevertheless, parties in a case have the right to argue the merits of their case at trial and do not have to put on their case simply to answer the jurisdictional question. *See id*. (quoting *Blue*, 34 S.W.3d at 554). A court "exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable." *Id*. at 391. For

12

example, if evidence relates to the subject-matter jurisdiction, the trial court should review that evidence "to determine if a fact issue exists." *Id*. Only if the evidence is undisputed or fails to raise a fact question on the *jurisdictional* issue should the court rule on *that* issue. *Id*. If evidence raises a fact issue concerning the court's jurisdiction, it would be inappropriate for the court to grant a plea to the jurisdiction. *Id*. at 391.

A court has discretion on when to set a hearing on a plea to the jurisdiction. *Id*. at 392. However, that discretion should not interfere with a party's rights to have a hearing on the merits. *Id*. It is a "fundamental precept that a court must not proceed on the merits of a case until legitimate challenges to its jurisdiction have been decided."[15] *Id*. As a preliminary matter, service of a pleading on another party must occur "not less than three days before the time specified for [a] hearing." Tex. R. Civ. P. 21. Motions for summary judgment must be served at least twenty-one days before the time specified for hearing. *See* Tex. R. Civ. P. 166a(c). The court then can only consider issues expressly presented in the written motion, answer, or other response. *Id*. When a case is set for a contested-case trial, the court must give reasonable notice of no less than forty-five days. Tex. R. Civ. P. 245.

In this case, the district court set the case for a hearing on a plea to the jurisdiction. One day before the hearing, Burnam amended his petition to seek a declaration that the Department was acting without statutory authority to arrest absent House members. Under the most lenient of the notice standards that could apply in this case, the three-day rule, the court should not have ruled

---

[15]  Although *Miranda* concerned the rights of a plaintiff, we discern no reason why a defendant would not have similar rights when a court denies its plea to the jurisdiction.

13

on the merits of the question of the Department's statutory authority because of lack of adequate notice.

On appeal, Burnam argues that this issue was tried by consent and so the court was proper in ruling on the merits. We have carefully reviewed the record and disagree. At the hearing, the Department's jurisdictional argument on this issue was that its actions were conducted pursuant to House Rule 5, claiming it to be a legislative remedy and outside the jurisdictional purview of the courts. It also argued that Burnam's remedy for this issue lies not in a declaratory-judgment action but in attempting to change the House Rule as a member of that legislative body.

In response, Burnam only asserted that he had "a right, as a state representative, for there to be a declaration whether or not this law enforcement agency can engage in this type of conduct in the future, as well as declare whether or not their resources were used in violation of state law." He then briefly indicated to the court the statutes on which he was relying. He did not attempt to reconcile those statutes with the House Rule.

Neither party presented argument on the merits of the issue. Instead, all arguments were made in jurisdictional terms. In addition, argument on any aspect of the Department's statutory authority was so brief as to constitute a small minority of the time of the hearing. We cannot reasonably conclude that either party intended to try the merits of this issue at that hearing. Because the trial court improperly ruled on the merits of whether the Department has authority to arrest absent House members, we sustain the Department's second issue.[16]

---

[16] We note that as a rule a party may not raise an issue for the first time on appeal. *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993). It would be inappropriate for us to consider this case on the merits when the Department has not had the opportunity to develop its arguments and present

14

**CONCLUSION**

We sustain Burnam's issue and hold his claim that the Department destroyed documents in violation of chapter 441 of the government code is not barred by sovereign immunity and is not moot. *See* Tex. Gov't Code Ann. §§ 441.185, .187. Thus, we reverse the judgment of the district court granting the plea to the jurisdiction on that issue and remand for further proceedings. We sustain the Department's second issue and hold that the district court should not have ruled on the underlying merits of the Department's statutory authority when it denied the plea to the jurisdiction. As a result, we vacate the judgment of the district court that the Department lacked statutory authority to arrest House members absent when a quorum is called and remand that issue for further proceedings as well.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Kidd and Puryear

Reversed and Remanded in Part; Vacated and Remanded in Part

Filed: May 13, 2004

---

them to the district court. As a result, we will not address the Department's first issue at this time. Instead, we must wait until the parties have had an opportunity to present those arguments to the district court.