# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00619-CV

---

**The State of Texas, Appellant**

**v.**

**City of Austin, Texas; County of Travis, Texas; Steve Adler, in his Official Capacity as Mayor, City of Austin, Texas; and Andy Brown, in his Official Capacity as County Judge, County of Travis, Texas, Appellees**

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-007712, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The State of Texas sought to stop appellees, City of Austin, the City's Mayor Steve Adler, Travis County, and County Judge Andy Brown (collectively, "local officials"), from enforcing emergency pandemic-related orders that the local officials issued requiring businesses to temporarily suspend dine-in food and beverage service from 10:30 p.m. to 6:30 a.m., beginning December 31, 2020, and ending January 3, 2021—the duration of New Year's weekend. The State appeals from the trial court's order denying its application for temporary injunctive relief. For the reasons explained below, we conclude that we lack jurisdiction over the appeal because the State's claims are moot and not ripe, and we dismiss the appeal for want of jurisdiction.

## BACKGROUND

On December 30, 2020, the State sued the local officials, seeking declaratory and injunctive relief as to the validity and enforcement of the County Judge's Order 2020-24 and the Mayor's Order No. 20201229-24 (collectively, "local orders"). The local orders were issued late on December 29, 2020, and they required businesses in the City of Austin and Travis County to suspend "indoor and outdoor dine-in food and beverage service at 10:30 p.m." each night until 6:00 a.m. the following morning, beginning on December 31, 2020, and ending on January 3, 2021. The local orders established that a business's violation of this requirement would constitute a misdemeanor criminal offense punishable by a fine of up to $1,000.

The State asserts in its trial-court petition that issuance and enforcement of the local orders are invalid, unlawful, and constitute ultra vires acts because: (1) Governor Abbott suspended the only statutes that would have allowed the local officials to issue the local orders; (2) the local officials were acting as the Governor's designated agents when they issued the local orders, and as agents, they could not ignore the will of their principal; and (3) the local orders conflict with the Governor's Executive Order GA-32. The Governor issued GA-32 on October 7, 2020, as one of a series of orders issued "[r]elating to the continued response to the COVID-19 disaster as Texas reopens." The State alleges that by prohibiting indoor and outdoor dine-in food and beverage service during the period from 10:30 p.m. to 6:00 a.m. on the designated days, the local orders conflict with GA-32 because they "force[] restaurants and business[es] to close when they would otherwise be allowed to operate under GA-32." GA-32 addresses what businesses and services can remain open under what circumstances. Among other things, it specifically provides that "[r]estaurants that have less than 51 percent of their gross receipts from the sale of alcoholic beverages, and whose customers eat or drink only while seated, may offer

2

dine-in services" and provides that bars or similar establishments "may offer on-premises services" under certain listed circumstances. GA-32 does not explicitly address hours of operation for any businesses. GA-32 states that it shall supersede a conflicting local order but only to the extent that the local order "restricts services allowed by [GA-32]." The State seeks a declaration that the local orders are invalid and unconstitutional, as well as temporary and permanent injunctions ordering the local officials to: (1) stop, or order stopped, all enforcement efforts of the local orders; (2) rescind the local orders; and (3) refrain from issuing any new emergency orders more restrictive than, or conflicting with, GA-32.[1]

On December 31, the trial court held a hearing on the State's application for a temporary injunction. The trial court took judicial notice of its entire file, including copies of the local orders and GA-32 that were attached to the State's petition. The State did not call any witnesses, and the local officials' only witness was Mark Escott, M.D., who serves as the Interim Health Authority for the City and County and is one of the individuals in charge of the local response to the COVID-19 pandemic. Dr. Escott testified about the specific level of COVID-19 risk in the Austin and Travis County area at that time and about the local officials' public-health concerns that led to issuing the local orders to temporarily suspend dine-in hours at 10:30 p.m. during the New Year's weekend. He testified that the goal was to mitigate "th[e] risk—of large numbers of people crowded together to celebrate and—and, hopefully, [to] help us to flatten the curve" of a projected post-holiday surge in COVID-19 cases.

In particular, Dr. Escott testified that the community was at Stage 5—"the highest stage of risk"—"which indicates widespread, uncontrolled community transmission of COVID-

---

[1] In addition, the State initially sought a temporary restraining order against the enforcement of the local orders, but the parties agreed at the hearing to proceed only on the State's application for a temporary injunction.

3

19" and that the local orders were "targeting that area of risk in a very surgical way." He explained that "[t]he two most important things are masking and distancing" to reduce the transmission of COVID-19 and that restaurants were a "challenge" because eating or drinking requires removing masks. Dr. Escott also testified about the disconcerting trends in Austin and Travis County at that point with increasing hospitalizations, limited staffing resources, and limited availability of intensive-care units in the area to handle the projected post-holiday surge in COVID-19 cases. Dr. Escott described a "surge" as a time when "demand outpaces the resources that are available," and he explained that the community already had "more than 100 [medical] staff requests that have gone unfilled because there aren't more staff. They're very difficult to find." He further noted the concern specific to the Austin and Travis County community that other major metropolitan areas in Texas were still surging, including Dallas, Fort Worth, San Antonio, and Houston, meaning that Austin and Travis County would "be fifth or sixth in line of that surge."

That same day, the trial court denied the State's request for temporary injunctive relief. The State immediately appealed to this Court and sought temporary relief under Texas Rule of Appellate Procedure 29.3. *See* Tex. R. App. P. 29.3 (authorizing appellate court to make "any temporary orders necessary to preserve the parties' rights until disposition of the appeal"). After this Court denied the State's request, the State filed a petition for writ of mandamus with the Texas Supreme Court, which conditionally granted the State's requested relief on January 1, 2021. *See In re State*, No. 21-0001, 2021 Tex. LEXIS 1, at *1 (Tex. Jan. 1, 2021, order). The Texas Supreme Court directed this Court "to issue relief under Texas Rule of Appellate Procedure 29.3, instanter, enjoining enforcement of [the local orders] pending final resolution of the appeal." *Id.* Accordingly, this Court immediately enjoined enforcement of the local orders

4

pending final resolution of this interlocutory appeal. *See State v. City of Austin*, No. 03-20-00619-CV, 2021 WL 22007, at *1 (Tex. App.—Austin Jan. 1, 2021, order) (per curiam). The underlying proceeding remains pending before the trial court.

We also granted the State's motion to consider the appeal on an expedited basis. In our letter to the parties granting that motion, we requested that the parties address this Court's jurisdiction over the appeal and raised the question of whether the appeal is moot. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (noting that generally a "controversy must exist between the parties at every stage of the legal proceedings, including the appeal" or the "case becomes moot"). The parties addressed the jurisdictional issue in their briefing on the merits of the appeal.

While this appeal was pending but after briefing was complete, Governor Abbott issued Executive Order GA-34 on March 2, 2021.[2] The Court takes judicial notice of GA-34. *See* Tex. R. Evid. 201(a), (b)(2), (c)(1), (d); *Office of Pub. Util. Counsel v. Public Util. Comm'n of Tex.*, 878 S.W.2d 598, 600 (Tex. 1994) ("A court of appeals has the power to take judicial notice for the first time on appeal."); *see also* Tex. Gov't Code § 22.220(c) ("Each court of appeals may, on affidavit or otherwise, as the court may determine, ascertain the matters of fact that are necessary to the proper exercise of its jurisdiction."). Among its other provisions, GA-34 superseded GA-32, as well as certain other prior executive orders.

**ANALYSIS**

The sole issue presented by the State on appeal is whether the trial court abused its discretion by refusing to enjoin enforcement of the local orders. The purpose of the

---

[2] *See* https://open.texas.gov/uploads/files/organization/opentexas/EO-GA-34-opening-Texas-response-to-COVID-disaster-IMAGE-03-02-2021.pdf, last visited March 2, 2021.

extraordinary remedy of a temporary injunction is to preserve the status quo of the litigation's subject matter pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain a temporary injunction, an applicant must plead and prove three elements: (1) a claim against the opposing party; (2) a probable right to the relief sought; and (3) probable, imminent, and irreparable injury in the interim. *Id.*

We address mootness as a threshold issue because it concerns our subject-matter jurisdiction. *See, e.g.*, *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005); *Hughs v. Dikeman*, 609 S.W.3d 602, 611 (Tex. App.—Houston [14th Dist.] 2020, pet. filed). "[A] suit can become moot at any time, including on appeal," and "courts have an obligation to take into account intervening events that may render a lawsuit moot." *Heckman v. Williamson County*, 369 S.W.3d 137, 166-67 (Tex. 2012).

In response to our request for briefing on mootness, the State asserts that the appeal is not moot, focusing on its request for injunctive relief to prevent the local officials from issuing future emergency orders more restrictive than or conflicting with GA-32, and relying on two exceptions to the mootness doctrine: the "capable of repetition, yet evading review" exception and the "public interest" exception. *See id.* (describing capable-of-repetition exception); *F.D.I.C. v. Nueces Cnty.*, 886 S.W.2d 766, 767 (Tex. 1994) (recognizing but not adopting public-interest exception). In response, the local officials argue that the appeal is moot because the local orders—in effect for a single 10:30 p.m. to 6:00 a.m. period—expired after being temporarily enjoined by this Court (as directed by the supreme court). In addition, the local officials argue that the State's request for injunctive relief as to similar future orders would result in an advisory opinion. In other words, the local officials argue that two of the State's three claims for injunctive relief are potentially moot—its requests that the trial court order the

local officials (1) to "stop, or order stopped, all enforcement efforts" of the local orders and (2) to rescind the local orders. The local officials assert that the third request, that the trial court order the local officials to "refrain from issuing any new emergency orders more restrictive than, or conflicting with, GA-32," is not ripe.[3]

**Legal framework**

The parties' jurisdictional arguments in this case implicate the doctrines of mootness and ripeness. The constitutional roots of these justiciability doctrines "lie in the prohibition on advisory opinions, which in turn stems from the separation of powers doctrine." *Patterson v. Planned Parenthood of Hous. & Se. Tex.*, 971 S.W.2d 439, 442-43 (Tex. 1998) (citing, *e.g.*, Tex. Const. art. II, § 1 (establishing separation of powers among three branches of government); *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 444 (Tex. 1993) ("We have construed our separation of powers article to prohibit courts from issuing advisory opinions because such is the function of the executive rather than the judicial department.")). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute." *Southwestern Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 685 (Tex. 2020) (quoting *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995)).

---

[3] Although the State frames its issue presented on appeal as seeking to establish only that the trial court abused its discretion by refusing to enjoin enforcement of the local orders, in its prayer, it requests that we reverse the district court's denial of its motion for temporary injunction and enter the temporary injunction that it requested, which sought the three listed forms of relief. And, as noted, it focuses its argument against mootness on its claim for injunctive relief from future "illegal orders." Accordingly, we consider our jurisdiction over each of the State's three claims for injunctive relief.

Under the doctrine of ripeness, courts must consider whether "at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Patel v. Texas Dep't of Licensing & Reg.*, 469 S.W.3d 69, 78 (Tex. 2015) (quoting *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851-52 (Tex. 2000)). Thus, when analyzing ripeness, we focus on whether a case involves "uncertain or contingent future events that may not occur as anticipated or may not occur at all." *Waco Indep. Sch. Dist.*, 22 S.W.3d at 852 (quoting *Patterson*, 971 S.W.2d at 442). Conversely, the mootness doctrine applies "when there ceases to be a justiciable controversy between the parties or when the parties cease to have 'a legally cognizable interest in the outcome.'" *State ex. rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018) (quoting *Williams*, 52 S.W.3d at 184). "Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Heckman*, 369 S.W.3d at 162.

In analyzing our jurisdiction over this interlocutory appeal from the trial court's order denying the State's request for a temporary injunction, we must determine whether a justiciable controversy exists as to each of the State's three claims for temporary injunctive relief. *See, e.g.*, *id.* at 150 (explaining when analyzing justiciability doctrine of standing that if "a plaintiff lacks standing to assert one of his claims, the court lacks jurisdiction over that claim and must dismiss it"). We may only exercise jurisdiction over this appeal if a justiciable controversy exists as to at least one of these claims. *See Harper*, 562 S.W.3d at 6 (recognizing that case "is not rendered moot simply because some of the issues become moot during the appellate process" (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding))); *Heckman*, 369 S.W.3d at 150-51 (explaining that "if the plaintiff lacks standing to bring *any* of his claims, the court must dismiss the whole action for want of

8

jurisdiction"). If only some claims become moot, "the case remains 'live,' at least as to other claims or issues that are not moot." *Harper*, 562 S.W.3d at 6.

**Mootness**

As noted above, the two claims that the local officials argue are moot are the State's requests that the trial court order the local officials (1) to "stop, or order stopped, all enforcement efforts" of the local orders and (2) to rescind the local orders. The local orders expired on their own terms at 6:00 a.m. on January 3, 2021, but they were in place for 7.5 hours from 10:30 p.m. on December 31, 2020, to 6:00 a.m. on January 1, 2021, before this Court enjoined their enforcement. *See State*, 2021 WL 22007, at *1. In our order enjoining enforcement, "[p]er the Texas Supreme Court's directive and pursuant to Texas Rule of Appellate Procedure 29.3," we enjoined "enforcement of [the local orders] pending final resolution of this appeal." *Id.*

The local officials contend that the only issue that is ripe for interlocutory appeal is the State's enforcement claim. They further argue that because the local orders are not currently in effect, the expired orders moot the appeal, and "there is nothing to disturb the State's asserted status quo." The local officials characterize as "hypothetical" the question of whether the local orders conflict with GA-32 and thus should not be enforced, and they assert that "[t]he answer to the that [sic] question no longer affects the parties" and would be an advisory opinion. The State, on the other hand, asserts that it had standing to challenge the trial court's denial of the temporary injunction because the threatened irreparable injury to the State from the local orders was "realized when [the local officials] began to enforce the order[s]."

9

Other than the State's conclusory statement that the local officials "began to enforce the order[s]" before they were enjoined, nothing in the parties' briefing or the record indicates that the local officials actually enforced the local orders during the single 7.5-hour period that they were in effect. The specific provisions in the local orders concerning enforcement authorized enforcement of the dine-in hours by various local inspectors and established that a violation of the orders "is a misdemeanor punishable by a fine not to exceed $1,000, but not by confinement." The orders further provided that a violation may be enforced by the filing of a probable-cause affidavit alleging the violation with the appropriate court or by issuing a citation to the person violating the orders. In addition, the City's order states: "Enforcement of this Order is substantially reliant on self-regulation and a community commitment to public health and safety under the threat of COVID-19. If there is not widespread compliance with this Order, the City will increase enforcement efforts, as allowed by law." There is no evidence that any probable-cause affidavits were filed or citations were issued to enforce the local orders on New Year's Eve, and this Court's January 1 order precluded any subsequent action to enforce the local orders. Accordingly, we construe the local officials' argument as to mootness of the State's requested injunctive relief to mean that the local orders have expired and the local officials neither pursued in the past, nor intend to pursue in the future, enforcement of any violations that may have occurred during that 7.5-hour period before we enjoined the orders.[4] Absent any enforcement efforts, the State's requested relief—an order to

---

[4] Appellate courts generally cannot consider evidence not before the trial court when the trial court made the challenged ruling. *MSC Gleannloch LLC v. Harris Cnty. Water Control & Improvement Dist. No. 119*, No. 14-19-00157-CV, 2020 WL 6278477, at *3 (Tex. App.—Houston [14th Dist.] Oct. 27, 2020, no pet.) (mem. op.) (citing *University of Tex. v. Morris*, 344 S.W.2d 426, 429 (Tex. 1961)). However, when a court must determine whether an appeal has become moot (or other matters related to this Court's proper exercise of jurisdiction), we may

10

"stop, or order stopped, all enforcement efforts of [the local orders]"—would have no legal effect. And because the orders have expired by their terms, an order requiring the local officials to rescind the orders likewise would have no legal effect. Thus, subsequent events have mooted both of those requests for injunctive relief because this Court's "action on the merits cannot affect the parties' rights or interests." *See Heckman*, 369 S.W.3d at 162.

**Capable-of-repetition exception to the mootness doctrine**

The State contends that the expiration of the local orders does not render its claims for injunctive relief moot because the claims satisfy the "capable of repetition, yet evading review" exception to the mootness doctrine. We disagree. This exception applies only in rare circumstances. *Williams*, 52 S.W.3d at 184 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). To invoke the exception, the State must prove that: "(1) the challenged action was too short in duration to be litigated fully before the action ceased or expired; and (2) a reasonable expectation exists that the same complaining party will be subjected to the same action again." *Id.*

The local officials do not dispute that the challenged local orders were too short in duration to be litigated fully before they expired. However, the local officials contend, and we agree, that the State cannot meet its burden to show a reasonable expectation or demonstrated probability that the local officials will take the same actions and again engage in the same conduct. *See Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam). The "mere physical or

---

consider evidence not before the trial court. *Id.* (citing *Morris*, 344 S.W.2d at 429; *FinServ Cas. Corp. v. Transamerica Life Ins. Co.*, 523 S.W.3d 129, 147 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)). In this case, we consider the absence of evidence of any enforcement of the local orders to be significant. *See id.* ("Nothing in our record indicates that the District has continuing plans or otherwise intends to stop providing water and wastewater services to MSC Gleannloch.").

theoretical possibility" that the same party may be subjected to the same action again is not sufficient to satisfy this element. *See id.*; *see also Williams*, 52 S.W.3d at 185 (concluding too speculative to base "reasonable expectation" on assumption that appellees would violate law again because courts instead assume that parties will follow law). In particular here, given that the Texas Supreme Court directed this Court to enjoin the local officials from enforcing the local orders pending final resolution of this appeal, we decline to assume that the local officials would engage in the same conduct—enforcing the expired local orders—again.

The State argues that the capable-of-repetition element is satisfied because the local officials "'would be free to'" violate GA-32 again and "issue an identical order 'after receiving a ruling that the case was moot,'" quoting *Davis v. Burnam*, 137 S.W.3d 325, 333 (Tex. App.—Austin 2004, no pet.) (holding claim regarding allegedly improper document destruction was not moot because state agency would be able to destroy documents before complying with open-records request if court declared case moot).[5] However, this contention only addresses the State's claim for injunctive relief precluding future orders conflicting with GA-32; it does not support a conclusion that the State's claim for injunctive relief to stop enforcement of the *existing* local orders satisfies the capable-of-repetition element. As we will discuss below, the State's future-orders claim is not ripe, and thus, this claim cannot support our Court's exercise of jurisdiction over the appeal. Moreover, even if this claim had ever been ripe, it would now be moot because the Governor has issued GA-34, which supersedes GA-32.

---

[5] Although the State argues that the local officials could issue an "identical" order, because the local orders were limited to the 2021 New Year's weekend, we liberally construe this argument to mean that the local officials could issue another similar order requiring businesses to temporarily suspend dine-in food and beverage service overnight for some given short period of time for similar pandemic-related reasons.

In support of its argument that we have jurisdiction under the capable-of-repetition exception, the State relies on the supreme court's decision in *Matthews v. Kountze Independent School District*, 484 S.W.3d 416, 418 (Tex. 2016), to suggest that the local officials have not satisfied their burden to demonstrate mootness because they have not shown "that the challenged conduct cannot reasonably be expected to recur." However, the court in *Matthews* was not considering the capable-of-repetition exception to the mootness doctrine. Instead, the court addressed a split of authority among the courts of appeals concerning whether defendants in declaratory-judgment cases must "admit that their prior policies were unconstitutional in order to moot a case." *Id.*

Under the circumstances present in *Matthews*, the court held that the defendant school district's voluntary ceasing of the challenged conduct (prohibiting cheerleaders from displaying banners containing religious signs or messages at school-sponsored events) did not moot the plaintiffs' claims for prospective relief. *Id.* at 420 (concluding that school district's voluntary discontinuance of its prohibition of religious banners provided no assurance that future prohibition would not occur, given that district's new policy stated only that district was not *required* to prohibit such banners and also reserved to district unfettered discretion to regulate those banners). In contrast, in this case, the local officials have not voluntarily ceased the challenged conduct of enforcing the local orders—instead, this Court (as directed by the supreme court) enjoined them from enforcing the local orders. Again, we conclude that by taking the position that the appeal is moot because the local orders have expired, the local officials are acknowledging that they have not enforced and do not intend to enforce the orders for the 7.5-hour period that they were in effect. Therefore, we hold that the State's claim for injunctive

13

relief to prevent the local officials from enforcing the local orders does not satisfy the capable-of-repetition exception to the mootness doctrine.[6]

**Public-interest exception to the mootness doctrine**

The State also contends that the public-interest exception to the mootness doctrine applies here because of "[t]he possibility that other city and county officials will follow suit" and issue orders like the local orders that the State alleges conflict with GA-32. This Court has recognized the public-interest exception, which expands the capable-of-repetition exception to include parties other than those involved in the current case. The public-interest exception "allows appellate review of a question of considerable public importance if that question is capable of repetition between either the same parties or other members of the public but for some reason evades appellate review." *University Interscholastic League v. Buchanan*, 848 S.W.2d 298, 304 (Tex. App.—Austin 1993, no writ); *see also Federal Deposit Ins. Corp. v. Nueces County*, 886 S.W.2d 766, 767 (Tex. 1994) (recognizing that some courts of appeals have adopted exception but not reaching issue of viability of public-interest exception). The State asserts that the question of "considerable public importance" at issue here is the public interest in the local officials' compliance with GA-32. *See Securtec, Inc. v. County of Gregg*, 106 S.W.3d 803, 811 (Tex. App.—Texarkana 2003, pet. denied) (concluding appeal in declaratory-judgment action was not moot because county's compliance with bidding procedures in Local Government Code was "a matter of public interest" satisfying exception). The State also asserts that its "power to

---

[6] Although the State does not address the application of the exception to its claim seeking to require the local officials to rescind the orders, that claim likewise is not capable of repetition because the local orders have expired.

protect its citizens' health and livelihood during a pandemic" is a question of considerable public importance that prevents its claims for injunctive relief from becoming moot.

Despite the State's efforts to reframe the issues on appeal, the claims at issue are the State's requests for injunctive relief, not its request for a declaration that the local orders are invalid and unconstitutional. The only claims before this Court are the State's requests that the trial court order the local officials to stop enforcement of the local orders, to rescind the local orders, and to refrain from issuing future orders more restrictive than, or conflicting with, GA-32. The State's first two requests are specific to the local orders at issue here, and those local orders are not capable of precise repetition by other city and county officials. As for the State's request that the trial court order the local officials not to issue future orders that conflict with GA-32, as noted above, GA-34 has superseded GA-32. Because it is no longer possible for the local officials or any other city and county officials to issue an order that conflicts with GA-32, this claim would be moot had it ever been ripe—which, for the reasons discussed below, it never was. Thus, while the State's power to compel the local officials' compliance with GA-32 (at least before GA-32 was superseded) and the State's "power to protect its citizens' health and livelihood during a pandemic" are questions of considerable public importance, the State's claims for the particular injunctive relief at issue here are not capable of repetition and thus do not fall into the public-interest exception to mootness. "We do not have power to decide moot cases, whether they 'involve a matter of public concern' or not." *Morath v. Lewis*, 601 S.W.3d 785, 789 (Tex. 2020) (per curiam) ("Indeed, the need for courts to mind their jurisdictional bounds is perhaps at its greatest in cases involving questions of public importance, where the potential for undue interference with the other two branches of government is most acute.").

15

Therefore, because a justiciable controversy between the parties no longer exists as to the State's requests for temporary injunctive relief to require the local officials to "stop, or order stopped, all enforcement efforts of [the local orders]" and "rescind the [local orders]," and because neither of the asserted mootness exceptions applies here, we conclude that the appeal is moot as to these claims for temporary relief.

**Ripeness**

We turn now to the issue of whether the State's remaining claim seeking injunctive relief to prevent the issuance of future orders presented a justiciable controversy at the time the suit was filed. Through that claim, the State sought to preserve the status quo by an injunction requiring the local officials "to refrain from issuing any new emergency orders more restrictive than, or conflicting with, GA-32." Put another way, the State sought to enjoin the local officials from issuing future ultra vires orders.

A claim is not ripe when it involves "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Patterson*, 971 S.W.2d at 442 (quoting 13A Charles A. Wright et al., *Federal Practice and Procedure* § 3532, at 112 (2d ed. 1984)). Ripeness requires "a live, non-abstract question of law that, if decided, would have a binding effect on the parties." *Heckman*, 369 S.W.3d at 147; *see also Texas Ass'n of Bus.*, 852 S.W.2d at 444 ("The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties."). The ripeness doctrine "emphasizes the need for a concrete injury for a justiciable claim to be presented." *Patterson*, 971 S.W.2d at 442; *see also Waco Indep. Sch. Dist.*, 22 S.W.3d at 851-52 (explaining that courts consider whether facts are sufficiently developed "so that an injury has occurred or is likely to occur, rather than being

contingent or remote."). "By focusing on whether the plaintiff has a concrete injury, the ripeness doctrine allows courts to avoid premature adjudication, and serves the constitutional interests in prohibiting advisory opinions." *Waco Indep. Sch. Dist.*, 22 S.W.3d at 851-52. "The ripeness doctrine conserves judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). The doctrine's focus on "waiting for cases' timely factual development" allows "the proper development of the state's jurisprudence" and prevents excessive intrusion from courts on the policymaking domains of the other branches of government. *Patterson*, 971 S.W.2d at 443.

We examine the State's claim for injunctive relief from future orders by the local officials with these principles in mind. The State's claim here is the epitome of an unripe claim—its resolution depends on the occurrence of contingent future events that may not occur as anticipated or may not occur at all. *See id.* at 444. When the lawsuit was filed, the local officials had issued only the local orders at issue in this suit, which were limited in effect to New Year's weekend. The alleged harm to the State from any future similar orders that the State might consider to be more restrictive than or in conflict with GA-32 is contingent on uncertain future events—the local officials would have to issue additional orders and those orders would have to be more restrictive than or in conflict with GA-32. Assuming without deciding that the State could show harm from those hypothetical orders if they were ever issued, the State could not show a concrete injury at the time it filed this suit from orders that might not ever be issued. *See Waco Indep. Sch. Dist.*, 22 S.W.3d at 852.

Although the State "cannot show that a concrete injury *has occurred,* the ripeness analysis would allow [it] to demonstrate a concrete injury by showing that it is *likely to occur.*"

17

*Id.* (citing *Patterson*, 971 S.W.2d at 443). In this case, however, the only indication suggested by the State of any threat of future orders is a statement Mayor Adler made to the press after the trial court ruled in the local officials' favor on New Year's Eve and the Texas Supreme Court subsequently directed us to enjoin the local orders: "We believe cities have the authority to react to local conditions and to protect their residents when the [S]tate won't."[7] But as in *Patterson* and *Waco Independent School District*, the State's mere speculation that the alleged injury could occur is not sufficient to show a likely concrete injury. *Compare Waco Indep. Sch. Dist.*, 22 S.W.3d at 852 (concluding that harm from challenged student-promotion plan was too speculative because it was contingent upon student performance on standardized tests, and if necessary, subsequent performance in district's remediation efforts), *and Patterson*, 971 S.W.2d at 443 (concluding that harm from rider to state's family-planning appropriation bill that might conflict with federal rules and cause state to lose federal family-planning funds was too speculative when state's precise course of action and federal government's response were both unclear), *with Kessling v. Friendswood Indep. Sch. Dist.*, 302 S.W.3d 373, 380 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (concluding that plaintiff sufficiently alleged "pattern and practice" of certain violations of Texas Open Meeting Act, which provides statutory remedy of mandamus or injunction to prevent violation or threatened violation of Act). While the threat of harm may constitute a concrete injury, "the threat must be 'direct and immediate' rather than conjectural, hypothetical, or remote." *Waco Indep. Sch. Dist.*, 22 S.W.3d at 852. Here, the State has not demonstrated that harm from a hypothetical future order was imminent at the time the suit was filed; at most, it was contingent on another order actually being issued by the local

---

[7] Chuck Lindell, *Texas Supreme Court Blocks Austin, Travis County Dine-In Curfew*, Austin Am.-Statesman (Jan. 2, 2021), https://www.statesman.com/story/news/2020/12/31/judge-hear-texas-ag-bid-overturn-austin-business-curfew/4099425001/, last visited March 4, 2021.

18

officials and that order conflicting with GA-32. *See id.* Without a concrete injury or a likely concrete injury, neither this Court nor the trial court has jurisdiction to consider this claim for injunctive relief. *See id.* at 853; *Patterson*, 971 S.W.2d at 444. "The essence of the ripeness doctrine is to avoid premature adjudication of just such a situation; to hold otherwise would be the essence of an advisory opinion, advising what the law would be on a hypothetical set of facts." *Patterson*, 971 S.W.2d at 444.

Moreover, the Governor has issued GA-34, which supersedes GA-32. This factual development demonstrates why the ripeness doctrine exists. *See id.* at 443 (explaining that "waiting for cases' timely factual development" allows "the proper development of the state's jurisprudence" and avoids intrusion by judicial branch on other branches' policymaking). Furthermore, even if the State's claim seeking the prevention of future orders conflicting with GA-32 had ever been ripe, the issuance of GA-34 has mooted it.

**CONCLUSION**

For these reasons, we conclude that no justiciable controversy exists as to the State's three claims for injunctive relief, and therefore, we lack jurisdiction over this interlocutory appeal. Accordingly, we vacate the trial court's order denying the temporary injunction and dismiss the appeal for want of jurisdiction. *See Texas Quarter Horse Ass'n v. American Legion Dep't of Tex.*, 496 S.W.3d 175, 182 (Tex. App.—Austin 2016, no pet.) (quoting *Texas Foundries v. International Moulders & Foundry Workers' Union*, 248 S.W.2d 460, 461 (Tex. 1952) ("The rule has long been established in this court that when a case becomes moot on appeal, all previous orders are set aside by the appellate court and the case is dismissed."), and explaining reasoning for procedural rule that prior trial-court orders are vacated

19

when case becomes moot on appeal); *see also* Tex. R. App. P. 43.2(f) (establishing that appellate court may "dismiss the appeal").

                                                   _____

                                                Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Kelly
  Dissenting opinion by Justice Goodwin

Dismissed for Want of Jurisdiction

Filed:   April 8, 2021